**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WEX BANK and FLEETONE FACTORING, LLC, a Tenessee limited liability company,<br><br>    Plaintiffs,<br><br>    v.<br><br>iLOAD, INC., an Illinois corporation; RIVOJ TRANS., INC., an Illinois corporation; EWA POLITANSKA, an individual; KINGA POLITANSKA a/k/a KINGA RISTIK a/k/a KINGA SAVIC, an individual, ILIJA RISTIK a/k/a IKO RISTIK an individual; LOLLIPOP LLC, an Illinois limited liability company; RELOAD INC., a dissolved Illinois corporation; RELOAD LLC, an Illinois limited liability company; PRESTON CARTER; ADAM WHITE; JAMES ELSEA; ROZA JOSIFOVA; ENBRAVIA, INC., an Illinois corporation; BUSINESS TRANSPORTATION SPECIALISTS, LLC, a Wisconsin limited liability company; ITRUCK REPAIR SHOP INC., a dissolved Illinois corporation; ENERGY LINE, INC., an Illinois corporation; IMEX LOGISTICS, INC., an Illinois corporation; B LINE TRANSPORT INC., an Illinois corporation; PAL 401 LLC, an Illinois limited liability company,<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 17 cv 3392<br><br>**PLAINTIFF REQUESTS TRIAL BY JURY** |

## COMPLAINT

Plaintiffs WEX Bank and FleetOne Factoring, LLC, a Tenessee limited liability company, by their attorneys, Laurie A. Martin Montplaisir, Diana H. Psarras and William A. Castle, Jr., of Robbins, Salomon & Patt, Ltd., for their Complaint against defendants iLoad, Inc., an Illinois corporation, Rivoj Trans., Inc., an Illinois corporation, Ewa Politanksa, Kinga Politanska a/k/a Kinga Ristik a/k/a Kinga Savic, Ilija Ristik a/k/a Iko Ristik, Lollipop, LLC, an Illinois limited liability company, I Load Truck Repair, LLC, a limited liability company,

ReLoad Inc., a dissolved Illinois corporation, ReLoad LLC, an Illinois limited liability company, Preston Carter, Adam White, James Elsea, Roza Josifova, Enbravia, Inc., an Illinois corporation, Business Transportation Specialists, LLC, a Wisconsin limited liability company, iTruck Repair Shop Inc., a dissolved Illinois corporation, Energy Line, Inc., an Illinois corporation, iMex Logistics, Inc., an Illinois corporation, B Line Transport Inc., an Illinois corporation, and PAL 401 LLC, an Illinois limited liability company, states as follows:

<u>**Introduction**</u>

1.      WEX Bank and its affiliated entity FleetOne Factoring, LLC, bring this action in order to recoup the over $1,900,000.00 in damages they have collectively suffered due to a fraud scheme by the Defendants.

2.      All the Defendants are associated with iLoad, Inc., an Illinois corporation, which, with its affiliated company Rivoj Trans, Inc., purportedly provided transportation carrier services to XPO Logistics, Inc.

3.      iLoad, Inc., and Rivoj Trans, Inc., each entered into a factoring relationship with one of the Plaintiffs, and each of Ewa Politanska, Kinga Politanska a/k/a Kinga Ristik a/k/a Kinga Savic and Ilija Ristik a/k/a Iko Ristik submitted false documents to Plaintiffs in a scheme to fraudulently obtain funds which were misappropriated and transferred to business entities controlled by or affiliated with Ilija Ristik a/k/a Iko Ristik and Kinga Politanska a/k/a Kinga Ristik a/k/a Kinga Savic with the purpose of improperly enriching themselves.

4.      As set forth in the facts of this Complaint, the Defendants never intended for the Plaintiffs to be repaid their advances to iLoad, Inc., and Rivoj Trans, Inc.

5.      In this Complaint, each of WEX Bank and FleetOne Factoring, LLC, seeks repayment of its advances from the individuals and entities who directly or indirectly received

13B703507

the fraudulently obtained proceeds of the WEX Bank and FleetOne Factoring, LLC, advances and/or participated in the scheme to defraud WEX Bank and FleetOne Factoring, LLC, to advance funds.

## Parties, Jurisdiction And Venue

6.     Plaintiff WEX Bank is an industrial banking association with its main office and principal place of business at 1104 Country Hills Drive, Odgen, Utah.

7.     Plaintiff FleetOne Factoring, LLC ("FleetOne"), is a Tennessee limited liability company, with its headquarters and principal place of business located in Nashville, Davidson County, Tennessee. As a limited liability company, FleetOne is a citizen of the states of each of its members. The sole member of FleetOne is Transplatinum Service LLC, a Tennessee limited liability company with its headquarters and principal place of business located in Nashville, Davidson County, Tennessee. The sole member of Transplatinum Service LLC is FleetOne Holdings, LLC, a Delaware limited liability company with its headquarters and principal place of business located in South Portland, Maine. The sole member of FleetOne Holdings, LLC is Wex, Inc., a Delaware corporation with its headquarters and principal place of business in South Portland, Maine.

8.     iLoad, Inc. ("iLoad") is a corporation incorporated in the State of Illinois with its principal place of business in Des Plaines, Illinois.

9.     Rivoj Trans, Inc. ("Rivoj"), is a corporation incorporated in the State of Illinois, with its principal place of business in Des Plaines, Illinois.

10.     On information and belief, Ewa Politanksa ("Ewa") is an individual domiciled in the State of Illinois.

3

13B703507

11.     On information and belief, Kinga Politanska a/k/a Kinga Ristik a/k/a Kinga Savic ("Kinga") is an individual domiciled in the State of Illinois.

12.     Kinga informed Plaintiffs, during a telephone conference on or about February 16, 2017, that Ewa is Kinga's mother.

13.     On information and belief, Ilija Ristik a/k/a Iko Ristik ("Ilija") is an individual domiciled in the State of Illinois and is a foreign Alien.

14.     Lollipop, LLC ("Lollipop") is an Illinois limited liability company. As a limited liability company, Lollipop is a citizen of the states of each of its members. Kinga and Ilija are both managers of Lollipop and, upon information and belief, are also members of Lollipop. There may be other members of Lollipop whose identities are currently unknown to Plaintiffs.

15.     ReLoad Inc., is a corporation that was incorporated in the State of Illinois with its principal offices located in Chicago, Illinois and which was involuntarily dissolved on or about August 26, 2016.

16.     ReLoad LLC, is an Illinois limited liability company. As a limited liability company, ReLoad LLC is a citizen of the states of each of its members. Ilija is a manager of ReLoad LLC, and on information and belief, is also a member of ReLoad LLC. There may be other members of ReLoad LLC whose identities are currently unknown to Plaintiffs.

17.     On information and belief, Preston Carter is an individual domiciled in the State of Illinois.

18.     On information and belief, Adam White is an individual domiciled in the State of Illinois.

19.     On information and belief, James Elsea is an individual domiciled in the State of Illinois.

13B703507

20.     On information and belief, Roza Josifova is an individual domiciled in the State of Illinois.

21.     Enbravia, Inc., is a corporation incorporated in the State of Illinois, which is not in good standing, with its principal offices located in Oswego, Illinois.

22.     Business Transportation Specialists, LLC ("BTS"), is a Wisconsin limited liability company. As a limited liability company, BTS is a citizen of the states of each of its members. Upon information and belief, Brian Delipara, an individual, is the manager and a member of BTS. Upon information and belief, Brian Delipara is domiciled in the State of Wisconsin. BTS may have other members whose identities are currently unknown to Plaintiff.

23.     iTruck Repair Shop Inc., is a corporation that was incorporated in the State of Illinois with its principal offices located in East Dundee, Illinois and which was voluntarily dissolved on or about November 4, 2016.

24.     Energy Line, Inc., is a corporation incorporated in the State of Illinois with its principal offices located in Melrose Park, Illinois.

25.     iMex Logistics, Inc., is a corporation incorporated in the State of Illinois with its principal offices located in Chicago, Illinois.

26.     B Line Transport Inc., is a corporation incorporated in the State of Illinois with its principal offices located in Park Ridge and/or Schiller Park, Illinois.

27.     PAL 401 LLC, is an Illinois limited liability company. As a limited liability company, PAL 401 LLC is a citizen of the states of each of its members. The identity of the member(s) of PAL 401 LLC is currently unknown to Plaintiff.

28.     This Court has original federal question subject matter jurisdiction under 28 U.S.C. §1331 because this action arises under RICO, 18 U.S.C. §1962. This Court has

13B703507

supplemental jurisdiction over all other claims raised in this action under 28 U.S.C. §1367(a) because they are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy.

29.     This Court may also have jurisdiction over this action based upon diversity of the parties pursuant to 28 U.S.C. §1332(a)(1) because, upon information and belief, each Defendant is a "citizen" of different states than WEX Bank or FleetOne, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

30.     Venue in the Northern District of Illinois is proper under 28 U.S.C. §1391(a) in that a substantial part of the events giving rise to WEX Bank's and FleetOne's claims occurred in this District.

## Allegations Common to All Counts

### A.     *Factoring*

31.     The ultimate parent company of each of WEX Bank and FleetOne is WEX, Inc., a publically traded company offering corporate payment financing solutions in several industries, including the transportation industry.

32.     WEX Bank and FleetOne are in the transportation factoring business, which business consists of the purchase of commercial accounts receivable ("Accounts") from trucking and other businesses in the transportation industry with whom a factor has formed a contractual relationship.

33.     "Accounts" as used herein and in the factoring industry has the same meaning as identified by the State of Illinois Uniform Commercial Code, 810 ILCS 5/9-101 *et. seq.*, (hereinafter "UCC"), which is:

> a right to payment of a monetary obligation, whether or not earned
> by performance, (i) for property that has been or is to be sold,
> leased, licensed, assigned, or otherwise disposed of, (ii) for

services rendered or to be rendered, (iii) for a policy of insurance issued or to be issued, (iv) for a secondary obligation incurred or to be incurred, (v) for energy provided or to be provided, (vi) for the use or hire of a vessel under a charter or other contract, (vii) arising out of the use of a credit or charge card or information contained on or for use with the card, or (viii) as winnings in a lottery or other game of chance operated or sponsored by a State, governmental unit of a State, or person licensed or authorized to operate the game by a State or governmental unit of a State. 810 ILCS 5/9-102(a)(2).

34.     WEX Bank provides funding for the purchase of the Accounts.

35.     FleetOne provides the administration and operations support in connection with WEX Bank's purchase of the Accounts.

36.     Prior to WEX, Inc. acquiring FleetOne, FleetOne provided funding to transportation factoring clients. After FleetOne's acquisition by WEX, Inc., the factoring contracts were entered into by and between WEX Bank and the transportation factoring client.

37.     Within the factoring industry, the entity that purchases Accounts is known as the "Factor" or "Purchaser" of the accounts, in this case, each of the Plaintiffs.

38.     The entity from whom the Accounts are purchased is known as the "Factoring Client" of the Accounts, in this case, each of iLoad and Rivoj.

39.     The Factoring Client issues an invoice for payment to each customer, for whom the Factoring Client has performed service(s) or sold good(s)

40.     Once the Plaintiffs purchase Accounts, which they believe to be bona fide "Eligible Accounts" as defined in the applicable factoring agreement, from its Factoring Client, in this case, iLoad and Rivoj, the Plaintiffs advance funds to the Factoring Client for the purchased Accounts and then collect payment from the Factoring Client's customers.

41.     The Factoring Client's customers are identified in the factoring industry as "Account Debtors," which as defined by § 9-102(3) of the UCC is "a person obligated on an Account…"

42.     XPO Logistics, Inc. ("XPO Logistics"), is a global logistics company. It is a corporation incorporated in the state of Delaware with its headquarters located in Greenwich, Connecticut.

43.     XPO Logistics was an Account Debtor of both iLoad and Rivoj.

**B.      Sale of XPO Logistics Accounts by iLoad to FleetOne**

44.     iLoad is a trucking company providing freight transportation services directly and/or through subcontractors.

45.     On or about May 26, 2015, FleetOne and iLoad entered into an Account factoring agreement, titled Amended and Restated Accounts Purchase Agreement (the "iLoad Factoring Agreement"). A true and correct copy of the iLoad Factoring Agreement is attached hereto and incorporated by reference herein as Exhibit 1.

46.     Pursuant to the iLoad Factoring Agreement, iLoad agreed to sell and FleetOne agreed to purchase certain XPO Logistics Accounts (the "iLoad Accounts") and iLoad granted to FleetOne, as security for all present and future obligations of iLoad under the iLoad Factoring Agreement, a continuing first priority and exclusive security interest in the assets of iLoad, including all Accounts, contract and contract rights and all proceeds thereof (hereinafter the "iLoad Collateral"). (Ex. 1-iLoad Factoring Agreement ¶4.1)

47.     On May 18, 2015, FleetOne duly filed a UCC Financing Statement with the Secretary of State of Illinois under File No. 20332026, a true and correct copy of which is attached hereto and incorporated by reference herein as Exhibit 2.

8

48.     FleetOne perfected its security interest in and to certain iLoad Collateral identified on the UCC Financing Statement, including the Accounts, contracts and contract rights and proceeds thereof by its filing of the iLoad UCC Financing Statement.

49.     On or about May 26, 2015, and simultaneously with the execution of the iLoad Factoring Agreement, Defendant Ewa executed a Guaranty, personally guarantying all of iLoad's obligations under the iLoad Factoring Agreement, in order to induce FleetOne to extend financial accommodations to iLoad (the "iLoad Guaranty"). A true and correct copy of the iLoad Guaranty is attached hereto and incorporated by reference herein as Exhibit 3.

50.     Between August 05, 2015 and August 31, 2016, FleetOne purchased approximately $909,587.12 per month in XPO Logistics Accounts from iLoad.

51.     FleetOne made Advances of up to Ninety-Five Percent of the face value of each Account, as identified on the iLoad Aging.

52.     Between May 26, 2015 and August 31, 2016, FleetOne received payment of approximately $701,599.01 per month from XPO Logistics for payment of iLoad from iLoad Accounts.

53.     Between May 26, 2015 and August 31, 2016, XPO Logistics paid FleetOne for the iLoad Accounts without counterclaim or offset.

54.     On or about November 1, 2016, XPO Logistics began to dispute invoices representing iLoad Accounts.

55.     On or about December 13, 2016, XPO Logistics informed FleetOne that it did not believe that the outstanding iLoad Accounts were legitimate and that it would not pay any outstanding iLoad Accounts.

9

56. An accounts receivable aging identifying all the iLoad Accounts for XPO Logistics' transportation services that were sold to FleetOne by iLoad and are still unpaid and outstanding is attached hereto as Exhibit 4 (the "iLoad Aging").

57. There is currently One Million Two Hundred Thirteen Thousand Four Hundred Fifty-Nine and 97/100 Dollars ($1,213,459.97) as of February 28, 2017 of outstanding iLoad Accounts due and owing to FleetOne (the "Outstanding iLoad Accounts").

58. On or about August 25, 2016, iLoad received an "Out of Service Order" from the Federal Motor Carrier Safety Administration (the "FMCSA"), and as a result iLoad was prohibited from operating its trucking fleet.

59. FleetOne was informed by Ewa that the "Out of Service Order" was due to a failed audit conducted by the FMCSA in connection with the iLoad driver logs.

C.    *Sale of XPO Logistics Accounts by Rivoj to WEX Bank*

60. During July 2016, Ewa contacted FleetOne and informed FleetOne that she had an affiliated transportation company and desired to begin factoring accounts receivable for the affiliated entity, Rivoj.

61. Rivoj was also providing transportation services primarily for XPO Logistics.

62. On information and belief, Rivoj operated from the same facility as iLoad, had the same employees as iLoad and had virtually identical operations to iLoad.

63. On or about August 05, 2016, WEX Bank and Rivoj entered into an Account factoring agreement, titled Accounts Purchase Agreement (the "Rivoj Factoring Agreement"). A true and correct copy of the Rivoj Factoring Agreement is attached hereto as Exhibit 5.

64. Pursuant to the Rivoj Factoring Agreement, Rivoj agreed to sell and WEX Bank agreed to purchase certain XPO Logistics Accounts of Rivoj (the "Rivoj Accounts") and Rivoj

10

13B703507

granted to WEX Bank, as security for all present and future obligations of Rivoj under the Rivoj Factoring Agreement, a continuing first priority and exclusive security interest in the assets of Rivoj, including all Accounts, contract and contract rights and all proceeds of thereof (hereinafter the "Rivoj Collateral"). (Ex. 5-Rivoj Factoring Agreement ¶4.1)

65.  On August 2, 2016, WEX Bank duly filed a UCC Financing Statement with the Secretary of State of Illinois under File No. 21598046, a true and correct copy of which is attached hereto as Exhibit 6.

66.  WEX Bank perfected its security interest in and to certain Rivoj Collateral identified on the Rivoj UCC Financing Statement, including the Accounts, contracts and contract rights and proceeds thereof by the filing of the Rivoj UCC Financing Statement.

67.  All Accounts purchased by WEX Bank from Rivoj pursuant to the Factoring Agreement were purchased with recourse to Rivoj. (Ex. 5 Factoring Agreement, ¶3.2).

68.  On or about August 05, 2016, and simultaneously with the execution of the Rivoj Factoring Agreement, Defendant Ewa executed a Guaranty in favor of WEX Bank, personally guarantying all of Rivoj's obligations under the Rivoj Factoring Agreement, in order to induce WEX Bank to extend financial accommodations to Rivoj (the "Rivoj Guaranty"). A true and correct copy of the Rivoj Guaranty is attached hereto and incorporated by reference herein as Exhibit 7.

69.  The majority of the Accounts sold by Rivoj and purchased by FleetOne were due and owing from XPO Logistics for transportation services.

70.  Between August 05, 2016 and August 31, 2016, FleetOne purchased approximately $97,672.40 per week in XPO Logistics Accounts from Rivoj.

71.     WEX Bank made Advances of up to Ninety-Five Percent of the face value of each Account.

72.     Between August 05, 2016 and August 31, 2016, WEX Bank received payment of approximately $9,876.34 per week from XPO Logistics for payment of Rivoj Accounts.

73.     Between August 05, 2016 and August 31, 2016, XPO Logistics paid WEX Bank for the Rivoj Accounts without counterclaim or offset.

74.     On or about November 1, 2016, XPO Logistics informed WEX Bank that it did not believe that the outstanding Rivoj Accounts were legitimate and it refused to pay any then outstanding or any future Rivoj Accounts.

75.     An accounts receivable aging identifying all the Rivoj Accounts for XPO Logistics transportation services that were sold to FleetOne by Rivoj and are still unpaid and outstanding is attached hereto and incorporated by reference herein as Exhibit 8 (the "Rivoj Aging").

76.     There is currently One Hundred Five Thousand Sixty-Five and 31/100 Dollars ($105,065.31) of outstanding Rivoj Accounts due and owing to WEX Bank (the "Outstanding Rivoj Accounts").

**D.      Due Diligence**

77.     FleetOne sent XPO Logistics a "Notice of Assignment" that put XPO Logistics on notice of the assignment of the XPO Logistics Accounts from iLoad to FleetOne, a true and correct copy of which is attached hereto and incorporated by reference herein as Exhibit 9 (the "iLoad Notice of Assignment").

78.     The iLoad Notice of Assignment satisfied the requirement under the Illinois UCC that notice be given to XPO Logistics as to the assignment of the iLoad Accounts to FleetOne and that all payments of the iLoad Accounts should be made to FleetOne. (Exhibit 9)

79.     WEX Bank sent XPO Logistics a "Notice of Assignment" that put XPO Logistics on notice of the assignment of the XPO Logistics Accounts from Rivoj to FleetOne, a true and correct copy of which is attached hereto and incorporated by reference herein as Exhibit 10 (the "Rivoj Notice of Assignment").

80.     The Rivoj Notice of Assignment satisfied the requirement under the Illinois UCC that notice be given to XPO Logistics as to the assignment of the Rivoj Accounts to WEX Bank and that all payments of the Rivoj Accounts should be made to WEX Bank.  (Exhibit 10)

81.     Upon submitting an Account for purchase, each of iLoad and Rivoj were required to submit an invoice, a rate confirmation sheet (the "RateCon") and a Bill of Lading (the "BOL") to confirm that the transportation services were provided (collectively, the "Supporting Documentation").

82.     Plaintiffs were in communication with iLoad and Rivoj virtually every business day during the terms of their respective agreements, by telephone, email or text, with individuals identifying themselves to be Ilija, Ewa or Kinga.

83.      During such communications, Plaintiffs routinely verified with Ilija, Ewa or Kinga that the iLoad Accounts and the Rivoj Accounts were "Eligible Accounts" as defined in the respective factoring agreements.

84.     In reliance on the Supporting Documentation and the communications and representations made by Ilija, Ewa and Kinga, the Plaintiffs made Advances to iLoad and Rivoj.

13B703507

85.     FleetOne made a total of $18,834,375.27 in Advances to iLoad (the "<u>FleetOne Advances</u>").

86.     WEX Bank made a total of $1,719,366.13 in Advances to Rivoj (the "<u>WEX Bank Advances</u>"; the FleetOne Advances and WEX Bank Advances are collectively referred to herein as the "<u>Plaintiffs' Advances</u>."

**E.      Role of Ilija Restik a/k/a Iko Restik**

87.     Ilija has identified himself on what purports to be his personal LinkedIn account as the "Owner" of iLoad.

88.     According to the Illinois Secretary of State's Business Corporation records, Ilija is identified as the registered agent and President of Rivoj.

89.     Ilija is identified on numerous Bills of Lading as the "Contact" for iLoad.

90.     Ilija s identified on numerous Bills of Lading as the "Contact" for Rivoj.

91.     Ilija supervised and was involved in the operations of both iLoad and Rivoj.

92.     Ilija was a signatory on both of iLoad's bank accounts and Rivoj's bank accounts.

93.     Ilija issued instructions to and had communications with the carriers and drivers providing transportation services on behalf of both iLoad and Rivoj.

94.     Ilija had communications directly with XPO Logistics relating to both the iLoad Accounts and Rivoj Accounts.

95.     Ilija had communications directly with WEX Bank and FleetOne related to both the iLoad Accounts and Rivoj Accounts.

96.     Ilija oversaw and participated in the preparation of both the Rivoj Supporting Documentation and iLoad Supporting Documentation submitted to WEX Bank and FleetOne, respectively.

14

**F.      *Role of Kinga Politanska a/k/a Kinga Ristik a/k/a Kinga Savic***

97.      Kinga has identified herself on her purported personal LinkedIn account as the "Bookkeeper" of iLoad.

98.      According to the Illinois Secretary of State's Business Corporation records, Kinga identifies herself as the registered agent and President of iLoad.

99.      Kinga identified herself to WEX Bank and FleetOne as the operations manager for Rivoj.

100.      Kinga is identified on numerous Bills of Lading as the "Contact" for iLoad.

101.      Kinga is identified on numerous Bills of Lading as the "Contact" for Rivoj.

102.      Kinga supervised and was involved in the operations of both iLoad and Rivoj.

103.      Kinga was a signatory on both iLoad's bank accounts and Rivoj's bank accounts.

104.      Kinga issued instructions to and had communications with the carriers and drivers providing transportation services on behalf of both iLoad and Rivoj.

105.      Kinga had communications directly with XPO Logistics relating to the iLoad Accounts and the Rivoj Accounts.

106.      Kinga had communications directly with WEX Bank and FleetOne related to the iLoad Accounts and the Rivoj Accounts.

107.      Kinga oversaw and participated in the preparation of both the iLoad Supporting Documentation and Rivoj Supporting Documentation submitted to FleetOne and WEX Bank, respectively.

**G.      *Role of Ewa Politanska***

108.      FleetOne received the iLoad Factoring Agreement with Ewa's electronic signature as the President of iLoad. (Ex. 1- iLoad Factoring Agreement)

109.    FleetOne received the iLoad Guaranty with Ewa's electronic signature. (Ex. 3-iLoad Personal Guaranty)

110.    WEX Bank received the Rivoj Factoring Agreement with Ewa's electronic signature as the President of Rivoj. (Ex. 5- Rivoj Factoring Agreement)

111.    WEX Bank received the Rivoj Guaranty with Ewa's electronic signature. (Ex. 7-Rivoj Guaranty)

112.    Plaintiffs had multiple and frequent telephone calls with a women identifying herself to be Ewa beginning on or about August 24, 2016 through February 2017 regarding all aspects of the operations and Accounts of both of iLoad and Rivoj.

113.    Ewa supervised and was involved in the operations of both iLoad and Rivoj.

114.    Ewa had communications directly with WEX Bank and FleetOne related to both the iLoad Accounts and Rivoj Accounts.

115.    Ewa submitted the iLoad Supporting Documentation and Rivoj Supporting Documentation to FleetOne and WEX Bank, respectively.

## H.    The Audit/Discovery of Fraud

116.    The iLoad Outstanding Accounts and the Rivoj Outstanding Accounts were represented to FleetOne to be Accounts created through transportation services as shown in the Supporting Documentation submitted for each Account.

117.    Unbeknownst to FleetOne at the time it purchased the iLoad Outstanding Accounts and unbeknownst to WEX Bank at the time it purchased the Rivoj Outstanding Accounts, iLoad, Rivoj, Kinga, Ilija and Ewa had concocted a scheme to induce Plaintiffs to make Advances on such Accounts, with the intent that Plaintiffs would never actually be paid for said Advances.

16

13B703507

118.    On or about November 01, 2016, XPO Logistics discovered inconsistencies, inaccuracies and missing information with the iLoad and Rivoj Supporting Documentation.

119.    When Plaintiffs failed to receive payment from XPO Logistics, Ilija, Ewa and Kinga on multiple occasions through telephone conferences and e-correspondence continued to represent and provide assurances to WEX Bank and FleetOne that the transportation services representing the Accounts had been provided and that each of iLoad and Rivoj had all Supporting Documentation evidencing such transportation services.

120.    The representations made by Ilija, Ewa and Kinga that the iLoad Accounts and the Rivoj Accounts were Eligible Accounts under the respective iLoad Factoring Agreement and Rivoj Factoring Agreement were false and part of a premeditated scheme to defraud WEX Bank and FleetOne.

121.    Further, Ewa and Kinga forwarded a letter to FleetOne, purportedly from BMO Harris Bank, representing that iLoad was in the process of receiving a $800,000 loan facility to facilitate its operations and repay FleetOne for certain of the past due iLoad Accounts.

122.    In reality, on August 23, 2016, BMO Harris Bank had filed a lawsuit against defendant KA Leasing Group, Kinga, iLoad and others for replevin of multiple vehicles due to payment defaults, which lawsuit is currently pending in the Circuit Court of Cook County, Illinois, Case No. 2016 L 050562 (the "BMO Harris Litigation").

123.    As alleged in the BMO Harris Litigation, Kinga, acting through KA Leasing Group, submitted false insurance coverage information to BMO Harris Bank in order to obtain vehicle financing.

124.    BMO Harris Bank was not undertaking due diligence to provide a loan facility to iLoad.

13B703507

125.     After several weeks of discussions between XPO Logistics and Plaintiffs as to failure of XPO Logistics to pay outstanding iLoad Accounts and Rivoj Accounts, XPO Logistics produced a spreadsheet to WEX Bank and FleetOne detailing its reasons for offset for each of the 881 invoices outstanding representing the iLoad Accounts and the Rivoj Accounts (the "XPO Logistics Disputed Invoices"), a true and correct copy of which is attached hereto and incorporated by reference herein as Exhibit 11 (the "XPO Logistics Disputed Invoice Spreadsheet").

126.     As detailed in the XPO Logistics Disputed Invoice Spreadsheet, virtually all the iLoad Outstanding Accounts and the Rivoj Outstanding Accounts were not valid Accounts and not for transportation services actually provided.

127.     As further set forth in the XPO Logistics Disputed Invoice Spreadsheet, out of the Eight Hundred Eighty-One XPO Logistics Disputed Invoices (a) 124 were for cancelled loads; (b) 131 of the iLoad Outstanding Accounts were for loads that iLoad was not on record as the carrier; (c) 3 had invalid load numbers; (d) 37 had incorrect Supporting Documents; (e) 308 did not have valid XPO Logistics load numbers; (f) 58 were for "Turn Around Not Used" and (g) 36 of the Rivoj Outstanding Accounts were for loads that Rivoj was not on record as the carrier.

128.     When FleetOne discussed the XPO Logistics Disputed Invoice Spreadsheet with Ilija, King and Ewa, each repeatedly insisted that XPO Logistics' claims were erroneous and that iLoad and Rivoj had all Supporting Documentation evidencing transportation services provided for XPO Logistics.

129.     Ewa agreed to assemble all Supporting Documentation for each of the iLoad Disputed Accounts, the Rivoj Disputed Accounts and the iLoad and Rivoj bank statement.

13B703507

130.    Ewa agreed that Plaintiffs' auditor (the "Auditor") would visit the premises of iLoad and Rivoj beginning February 06, 2017 (the "Audit").

131.    On the morning of February 06, 2017, Ewa cancelled the commencement of the Audit.

132.    When the Auditor arrived on February 07, 2017, it quickly became apparent that the deception extended far beyond the XPO Logistics Disputed Invoices.

133.    The sole employee at the premises when the Auditor arrived informed the Auditor that he did not know anyone named Ewa.

134.    Shortly thereafter, an individual identifying herself as Ewa arrived with Ilija, who introduced Ilija as her husband.

135.    Ilija and "Ewa" arrived at the premises in a Rolls Royce Wraith (approximate MSRP of over $300,000).

136.    The Auditor noted that the individual identifying herself as "Ewa" did not match the description of the individual whose driver's license is on file with FleetOne.

137.    The Auditor discovered through social media pictures that the individual introducing herself as "Ewa" was in fact Kinga.

138.    When the Auditor requested identification, Kinga claimed she did not have her driver's license due to getting pulled over for a ticket and asked if the Auditor wanted to see her ticket.

139.    When the Auditor then affirmed he wanted to see a copy of the ticket, Kinga claimed she did not have the ticket.

140.    Kinga never produced any identification as requested by the Auditor.

13B703507

141. The Auditor received verbal confirmation that the individual introducing herself as "Ewa" was in fact Kinga when she responded to "Kinga" when questioned by a truck driver at the premises.

142. During the course of the Audit, which lasted nine (9) days, the Auditor observed Ilija and employees referring to "Ewa" as "Kinga" and Kinga responding affirmatively to the same.

143. For the first three days of the Audit, the Auditor was provided copies of only two invoices.

144. For the next six (6) days of the Audit, the Auditor was provided with limited information, including the following: invoices, bills of lading, bank statements for iLoad, payroll account statements for iLoad, and bank statements for Rivoj.

145. iLoad did not produce a single piece of Supporting Documentation evidencing that the iLoad Accounts that were included in the XPO Logistics Disputed Invoices were bona fide Accounts.

146. Rivoj did not produce a single piece of Supporting Documentation evidencing that the Rivoj Accounts that were included in the XPO Logistics Disputed Invoices were bona fide Accounts.

147. Rather, the Auditor discovered that the Supporting Documentation for the iLoad Outstanding Accounts and Rivoj Outstanding Accounts had been manipulated, including but not limited to the falsification of Bills of Lading.

148. iLoad and Rivoj could not locate original documentation for many of the Auditor's sample selection requested. Of the 416 invoices selected for review only 73 were provided during the audit.

149.    Of the 73 invoices provided, 66 of the invoices were for canceled loads in which WEX Bank had been provided the initial confirmation and an altered bill of lading rather than the actual cancelled load confirmation and "turn around not used" rate.

150.    Other documentation provided to the Auditor by iLoad and Rivoj, which was represented by iLoad and Rivoj to be original documents, was suspect and likely not original because: (a) they did not bear the same evidence of wear as other original documents produced; (b) certain invoices represented as original were repeated in the documents produced; (c) pencil markings used on one invoice to demonstrate it as an original carried over into the next invoice in the selection sample even though the invoices would not have been sequentially sequenced; and (d) the location of the Assignment Stamp did not match the location of the Assignment Stamp of invoices provided to WEX Bank and FleetOne.

151.    For multiple invoices representing the iLoad Outstanding Accounts and Rivoj Outstanding Accounts, original Bills of Lading had been altered, attached to fake invoices and submitted to the Plaintiffs for purchase and Advances.

152.    Defendants knew the false misrepresentations and false documents created and submitted to FleetOne would be relied upon by WEX Bank and FleetOne and were, in fact, relied upon by WEX Bank and FleetOne in providing and authorizing Advances to iLoad.

153.    Defendants knew the false misrepresentations and false documents created and submitted to FleetOne would be relied upon by WEX Bank and FleetOne and were, in fact, relied upon by WEX Bank and FleetOne in providing and authorizing Advances to Rivoj.

154.    Each of Ilija, Ewa and Kinga continued to make false statements to FleetOne regarding impending payment by XPO Logistics for the iLoad Accounts and the Rivoj Accounts with the motive of causing each Plaintiff to forbear to pursue its legitimate legal remedies and

13B703507

the Plaintiffs did forbear in pursuing its legitimate legal remedies based on these false statements.

## I.     *Fraudulent Transfers*

155.    The Auditor was able to review the limited iLoad bank statements provided, which evidenced numerous withdrawals from the iLoad banking accounts by Ilija and Kinga, with some monthly withdrawals exceeding $400,000.

156.    From on or about December 31, 2015 through January 26, 2016, Kinga received checks payable to herself from the iLoad bank accounts in the amount of $254,500.00 (the "Kinga Transfers"), which funds were proceeds of the Plaintiff Advances made upon the purchase of the fraudulent iLoad Outstanding Accounts and/or were assets of iLoad in which FleetOne was granted a security interest.

157.    From on or about December 31, 2015 through January 26, 2016, Ilija received checks payable to himself from the iLoad bank accounts in the amount of $185,000.00 (the "Ilija Transfers"), which funds were proceeds of the FleetOne Advances made upon the purchase of the fraudulent iLoad Outstanding Accounts and/or assets of iLoad in which FleetOne was granted a security interest.

158.    From on or about January 6, 2016 through April 2, 2016, Ewa received checks payable to herself from the iLoad bank accounts in the amount of $14,870.00 (the "Ewa Transfers"), which funds were proceeds of the FleetOne Advances made upon the purchase of the fraudulent iLoad Outstanding Accounts and/or assets of iLoad in which FleetOne was granted a security interest.

159.    From on or about January 4, 2016 through August 29, 2016, iLoad transferred a total of $699,812.28 indirectly to Ilija, Kinga and/or Ewa via payments to various credit card

companies for the payment of personal and other expenses of Ilija, Kinga and Ewa (the "Credit Card Transfers"), which funds were proceeds of the FleetOne Advances made upon the purchase of the fraudulent iLoad Outstanding Accounts and/or assets of iLoad in which FleetOne was granted a security interest.

160.    From on or about January 4, 2016 through August 30, 2016, iLoad transferred a total of $133,226.87 indirectly to Ilija, Kinga and/or Ewa via payments to various automotive finance companies for the payment of personal and other expenses of Ilija, Kinga and Ewa (the "Automotive Transfers"), which funds were proceeds of the FleetOne Advances made upon the purchase of the fraudulent iLoad Outstanding Accounts and/or assets of iLoad in which FleetOne was granted a security interest.

161.    Further, as detailed in Counts XII - XIX hereinbelow, the Audit revealed that Ilija, Kinga, and Ewa have transferred funds from the iLoad bank accounts to various individuals and entities affiliated with Kinga and Ilija, which funds were proceeds of the FleetOne Advances made upon the purchase of the fraudulent iLoad Outstanding Accounts and/or assets of iLoad in which FleetOne was granted a security interest.

162.    During the period of time that King and Ilija were withdrawing funds from the iLoad bank accounts, iLoad was insolvent and in financial distress.

163.    The Audit revealed that iLoad was insolvent and in financial distress as iLoad was (a) making payments to various collection agencies, (b) making same day payments to and from its bank account indicative of check kiting, (c) overdrawn on certain bank accounts and subject to penalties for issuing NSF checks from other bank accounts and (d) iLoad was a defendant in several lawsuits.

164. iLoad, Ewa, Kinga and Ilija, are each defendants in some or all of the following lawsuits:

a. *Bank of the Ozarks v. iLoad Inc., Ewa Politanska, Kinga Politanska, Ilija Ristik, et al.*, Circuit Court of Cook County, Illinois, Case No. 2017 L 050181, filed February 17, 2017, currently pending;

b. *Bellwood Currency v. iLoad Inc., Kinga Politanska, et al.*, Circuit Court of Cook County, Illinois, Case No. 2017 M2 000621, filed February 16, 2017, currently pending;

c. *Quality Leasing, Inc. v. iLoad, Inc., Ilija Ristik, Kinga Savic,* Circuit Court of Cook County, Illinois, Case No. 2016 L 050851, filed December 23, 2016, currently pending;

d. *IH3 Property Illinois v. Ilija Ristik, et al.*, Circuit Court of Cook County, Illinois, Case No. 2016 M4 005832, filed November 2, 2016, dismissed by stipulation or agreement on November 26, 2016;

e. *BMO Harris Bank NA v. iLoad Inc., Kinga Politanska, et al.*, Circuit Court of Cook County, Illinois, Case No. 2017 L 050562, filed August 23, 2016, currently pending;

f. *Illinois State Tollway v. iLoad Inc.*, Circuit Court of Cook County, Illinois, Case No. 2016 M1 651248, filed August 10, 2016, registration of administrative judgment, citation pending;

g. *Republic Bank of Chicago v. iLoad Inc., Ewa Politanska and Ilija Ristik*, Circuit Court of Cook County, Illinois, Case No. 2016 L 007075, filed July 18, 2016, currently pending;

13B703507

h. *Berkshire Hathaway v. iLoad*, Circuit Court of Cook County, Illinois, Case No. 2016 M1 110233, filed April 22, 2016, currently pending;

i. *iLoad, Inc. v. Federal Deposit Insurance Corporation,* United States District Court for the Northern District of Illinois, Eastern Division, Case No. 15 cv 10436, counterclaim against iLoad filed May 5, 2016, agreed judgment in the amount of $503,302.01 entered against iLoad on January 12, 2017;

j. *Trinity v. Kinga Savic, Ewa Politanska, iLoad Inc., et al.*, Circuit Court of Cook County, Illinois, Case No. 2013 L  001595, filed February 2, 2013, judgment in the amount of $71,871.21 entered against iLoad, Kinga Savic and Luca Trans, Inc., jointly and severally, on October 27, 2016.

165.    During the period of time that King and Ilija were withdrawing funds from the iLoad bank accounts, Rivoj was insolvent.

## COUNT I
### (Breach of Contract: FleetOne v. iLoad)

Plaintiff FleetOne for its cause of action for breach of contract against Defendant iLoad, states and alleges as follows:

166.    Plaintiff FleetOne incorporates by reference Paragraphs 1 through 115 above as Paragraph 166 of this Count I as if fully set forth herein.

167.    All Accounts purchased by FleetOne from iLoad pursuant to the iLoad Factoring Agreement were purchased with recourse to iLoad. (Ex. 1-iLoad Factoring Agreement, ¶ 3.2)

168.    The iLoad Factoring Agreement expressly provided:

All Accounts purchased by FleetOne from [iLoad] shall be deemed sold on a recourse basis to FleetOne and shall be the Obligation of [iLoad]. Each Account may be charged back to [iLoad] in the event the obligation remains unpaid for ninety (90) days from the date of the invoice or, at the sole discretion of FleetOne, at such

25

13B703507

time FleetOne receives notice of the Dispute. (Ex. 1-iLoad Factoring Agreement, ¶ 3.2)

169. The Outstanding iLoad Accounts have remained unpaid for more than 90 days.

170. As further discussed hereinabove, FleetOne has received notice of a dispute of the XPO Logistics Accounts for iLoad.

171. On or about February 22, 2017, FleetOne sent written demand to iLoad for repayment of the Outstanding iLoad Accounts.

172. To date, iLoad has failed to pay any of the sums owed to FleetOne pursuant to the iLoad Factoring Agreement.

173. iLoad's failure to pay the Outstanding iLoad Accounts is an express breach and event of default of the iLoad Factoring Agreement. (Ex. 1-iLoad Factoring Agreement, ¶ 2.6)

174. The iLoad Factoring Agreement expressly provides FleetOne with the following right upon the occurrence of an event of default:

> Upon the occurrence of an Event of Default: (a) all Obligations owed to FleetOne shall be immediately due and payable upon demand by FleetOne; (b) FleetOne shall have the right to charge a fee of three percent (3%) for the first thirty (30 days or increment thereof that an Account Purchased remains unpaid and, after such 30 day period, an additional three percent (3%) for each 15 day period or increment thereof that an Account Purchased remains unpaid (the "Default Rate"), which Default Rate shall be assessed on the face value of the Account and which Default Rate shall be in addition to any other fees due to FleetOne hereunder. (Ex. 1-iLoad Factoring Agreement, ¶ 6.1)

175. iLoad is in breach of the iLoad Factoring Agreement due to its failure to pay the Outstanding iLoad Accounts.

176. FleetOne has suffered damages as result of iLoad's breach of the iLoad Factoring Agreement, which damages, although likely to increase, are in the amount of One Million Seven

Hundred Ninety-Seven Thousand Two Hundred Eighty and 82/100 Dollars ($1,797,280.82) as of February 28, 2017. Interest at the Default Rate continues to accrue.

177.    iLoad is responsible for all attorneys' fees and costs and other expenses incurred by FleetOne relating to the iLoad Factoring Agreement and in this matter.  (Ex. 1-iLoad Factoring Agreement, ¶9.3)

**WHEREFORE**, Plaintiff FleetOne Factoring, LLC prays for a judgment in its favor and against iLoad on Count I of the Complaint and for all compensatory damages, which, as of February 28, 2017, are in the amount of One Million Seven Hundred Ninety-Seven Thousand Two Hundred Eighty and 82/100 Dollars ($1,797,280.82), plus prejudgment interest, including, but not limited to, interest at the Default Rate through judgment, attorneys' fees and costs and for such other relief as this Court deems just and proper.

<u>**COUNT II**</u>
**(Breach of Contract: WEX Bank v. Rivoj)**

Plaintiff WEX Bank for its cause of action for breach of contract against Defendant Rivoj, states and alleges as follows:

178.    Plaintiff WEX Bank incorporates by reference Paragraphs 1 through 115 above as Paragraph 178 of this Count II as if fully set forth herein.

179.    All Accounts purchased by Wex Bank from Rivoj pursuant to the Rivoj Factoring Agreement were purchased with recourse to Rivoj. (Ex. 5-Rivoj Factoring Agreement, ¶ 3.2)

180.    The Rivoj Factoring Agreement expressly provided:

> All Accounts purchased by WEX Bank from [Rivoj] shall be deemed sold on a recourse basis to WEX Bank and shall be the Obligation of [Rivoj]. Each Account may be charged back to [Rivoj] in the event the obligation remains unpaid for ninety (90) days from the date of the invoice or, at the sole discretion of WEX Bank, at such time WEX Bank receives notice of the Dispute. (Ex. 5-Rivoj Factoring Agreement, ¶ 3.2)

13B703507

181.   The Outstanding Rivoj Accounts have remained unpaid for more than 90 days.

182.   As further discussed hereinabove, WEX Bank has received notice of a dispute of the XPO Logistics Accounts for Rivoj.

183.   On or about February 22, 2017, WEX Bank sent written demand to Rivoj for repayment of the Outstanding Rivoj Account.

184.   To date, Rivoj has failed to pay any of the sums owed to WEX Bank pursuant to the Rivoj Factoring Agreement.

185.   Rivoj's failure to pay the Outstanding Rivoj Accounts is an express breach and event of default of the Rivoj Factoring Agreement. (Ex. 5-Rivoj Factoring Agreement, ¶ 2.6)

186.    The Rivoj Factoring Agreement expressly provides WEX Bank with the following right upon the occurrence of an event of default:

> Upon the occurrence of an Event of Default: (a) all Obligations owed to WEX Bank shall be immediately due and payable upon demand by WEX Bank; (b) WEX Bank shall have the right to charge a fee of three percent (3%) for the first thirty (30) days or increment thereof that an Account Purchased remains unpaid and, after such 30 day period, an additional three percent (3%) for each 15 day period or increment thereof that an Account Purchased remains unpaid (the "Default Rate"), which Default Rate shall be assessed on the face value of the Account and which Default Rate shall be in addition to any other fees due to WEX Bank hereunder. (Ex. 5-Rivoj Factoring Agreement, ¶ 6.1)

187.   Rivoj is in breach of the Rivoj Factoring Agreement due to its failure to pay the Outstanding Rivoj Accounts.

188.   WEX Bank has suffered damages as result of Rivoj's breach of the Rivoj Factoring Agreement, which damages, although likely to increase, are in the amount of One Hundred Thirty-Seven Thousand One Hundred One and 51/100 Dollars ($137,101.51) as of February 28, 2017. Interest at the Default Rate continues to accrue.

28

189.     Rivoj is responsible for all attorneys' fees and costs and all fees and costs incurred by WEX Bank relating to the Rivoj Factoring Agreement and incurred in this matter. (Ex. 5-Rivoj Factoring Agreement, ¶9.3)

WHEREFORE, Plaintiff WEX Bank, LLC prays for a judgment in its favor and against Rivoj on Count II of the Complaint and for all compensatory damages, which, as of February 28, 2017, are in the amount of One Hundred Thirty-Seven Thousand One Hundred One and 51/100 Dollars ($137,101.51), plus prejudgment interest, including, but not limited to, interest at the Default Rate through judgment, attorneys' fees and costs and for such other relief as this Court deems just and proper.

## COUNT III
### (Breach of Guaranty: FleetOne v. Ewa)

Plaintiff FleetOne for its cause of action for breach of guaranty against Defendant Ewa Politanska, states and alleges as follows:

190.     Plaintiff FleetOne incorporates by reference Paragraphs 1 through 115 and 166 through 177 above as Paragraph 190 of this Count III as if fully set forth herein.

191.     In order to induce FleetOne to extend financial accommodations to iLoad, Defendant Ewa executed the iLoad Guaranty.

192.     Pursuant to the iLoad Guaranty, Defendant Ewa absolutely and unconditionally guaranteed to FleetOne prompt payment in full at maturity and all other times thereafter of any and all indebtedness, obligations and liabilities of every kind or nature at any time owing to FleetOne by iLoad and the prompt, full and faithful performance and discharge by iLoad of all the terms, conditions, agreements, representations, warranties, guaranties and provisions on the part of iLoad (the "iLoad Guaranteed Obligations").  (Ex. 3-iLoad Guaranty, ¶3)

29

13B703507

193.    On or about February 22, 2017, FleetOne sent written demand to Ewa for payment of the Outstanding iLoad Accounts.

194.    Ewa has breached the iLoad Guaranty and her iLoad Guaranteed Obligations to FleetOne by failing to pay the Outstanding iLoad Accounts after demand was made by FleetOne.

195.    FleetOne has suffered damages as result of Ewa's breach of the iLoad Guaranteed Obligations, which damages, although likely to increase, are in the amount of One Million Seven Hundred Ninety-Seven Thousand Two Hundred Eighty and 82/100 Dollars ($1,797,280.82) as of February 28, 2017. Interest at the Default Rate continues to accrue.

196.    Ewa is responsible for all attorneys' fees and costs and other expenses incurred by FleetOne relating to the iLoad Factoring Agreement, the iLoad Guaranty and in this matter. (Ex. 3- iLoad Guaranty, ¶17)

**WHEREFORE**, Plaintiff FleetOne Factoring, LLC prays for a judgment in its favor and against Ewa Politanska on Count III of the Complaint and for all compensatory damages, which, as of February 28, 2017, are in the amount of One Million Seven Hundred Ninety-Seven Thousand Two Hundred Eighty and 82/100 Dollars ($1,797,280.82), plus prejudgment interest, including, but not limited to, interest at the Default Rate through judgment, attorneys' fees and costs and for such other relief as this Court deems just and proper.

## COUNT IV
### (Breach of Guaranty: WEX Bank v. Ewa)

Plaintiff WEX Bank for its cause of action for breach of guaranty against Defendant Ewa Politanska, states and alleges as follows:

197.    Plaintiff WEX Bank incorporates by reference Paragraphs 1 through 115 and 178 through 189 above as Paragraph 197 of this Count IV as if fully set forth herein.

13B703507

198.    In order to induce WEX Bank to extend financial accommodations to Rivoj, Defendant Ewa executed the Rivoj Guaranty.  (Ex. 7-Rivoj Guaranty)

199.    Pursuant to the Rivoj Guaranty, Defendant Ewa absolutely and unconditionally guaranteed to WEX Bank prompt payment in full at maturity and all other times thereafter of any and all indebtedness, obligations and liabilities of every kind or nature at any time owing to WEX Bank by Rivoj and the prompt, full and faithful performance and discharge by Rivoj of all the terms, conditions, agreements, representations, warranties, guaranties and provisions on the part of Rivoj (the "Rivoj Guaranteed Obligations").  (Ex. 7-Rivoj Guaranty, ¶3)

200.    On or about February 22, 2017, FleetOne sent written demand to Ewa for payment of the Outstanding Rivoj Accounts.

201.    Ewa has breached the Rivoj Guaranteed Obligations to WEX Bank by failing to pay the Outstanding Rivoj Accounts after demand was made by WEX Bank.

202.    WEX Bank has suffered damages as result of Ewa's breach of the Rivoj Guaranty and her Rivoj Guaranteed Obligations, which damages, although likely to increase, are in the amount of One Hundred Thirty-Seven Thousand One Hundred One and 51/100 Dollars ($137,101.51) as of February 28, 2017. Interest at the Default Rate continues to accrue.

203.    Ewa is responsible for all attorneys' fees and costs and other expenses incurred by WEX Bank relating to the Rivoj Factoring Agreement, the Rivoj Guaranty and in this matter. (Ex. 7-Rivoj Guaranty, ¶26)

**WHEREFORE**, Plaintiff WEX Bank prays for a judgment in its favor and against Ewa Politanska on Count IV of the Complaint and for all compensatory damages, which, as of February 28, 2017, are in the amount of One Hundred Thirty-Seven Thousand One Hundred One and 51/100 Dollars ($137,101.51), plus prejudgment interest, including, but not limited to,

13B703507

interest at the Default Rate through judgment, attorneys' fees and costs and for such other relief as this Court deems just and proper.

## COUNT V
### (Common Law Fraud: FleetOne v. iLoad, Kinga, Ilija and Ewa)

Plaintiff FleetOne for its cause of action for common law fraud against Defendants iLoad, Kinga, Ilija and Ewa, states and alleges as follows:

204.    Plaintiff FleetOne incorporates by reference Paragraphs 1 through 165 above as Paragraph 204 of this Count V as if fully set forth herein.

205.     iLoad and Ewa expressly represented in the iLoad Factoring Agreement that any Accounts submitted to FleetOne for an Advance would, amongst other criteria, meet the following criteria:

a. iLoad is the sole and absolute owner of each Account offered for sale, each Account offered for sale is sold free and clear of any liens, security interests or encumbrances and all supporting documentation for each Account has been provided to FleetOne;

b. all terms governing each Account are accurately reflected in the invoice and supporting documentation and each Account sale is undisputed and represents a sum certain owed by an Account Debtor, without offset or counterclaim;

c. each Account represents [iLoad's] bona fide sale, delivery and acceptance or merchandise or full and complete performance of service to an Account Debtor;

d. each Account shall be absolutely enforceable against the Account Debtor in accordance with the express terms of the invoice, whether as to price, terms, delivery, guaranty or quality. (Ex. 1-iLoad Factoring Agreement, ¶ 5.2(a),(d),(f),(i), respectively)

13B703507

206. Since at least April 2016 up through and including August 30, 2016, each of iLoad, Ilija, Ewa and Kinga additionally made the following representations and warranties to FleetOne (collectively the "iLoad Misrepresentations"):

a. submission of the iLoad Accounts contained within the XPO Disputed Invoices to FleetOne as Accounts;

b. that each and every of the iLoad Accounts contained within the XPO Disputed Invoices, which are detailed in Exhibit 11 hereto, were bona fide Accounts created through transportation services performed by iLoad for XPO Logistics;

c. that each and every of the iLoad Accounts contained within the XPO Logistics Disputed Accounts, which are detailed in Exhibit 11 hereto, were Eligible Accounts in accordance with Section 3.1 the iLoad Factoring Agreement (Ex. 1- iLoad Factoring Agreement, ¶ 3.1);

d. that each and every of the iLoad Accounts contained within the XPO Logistics Disputed Accounts, which are detailed in Exhibit 11 hereto, met the criteria contained in ¶ 5.2 of the iLoad Factoring Agreement and detailed in Paragraph 205 hereinabove;

e. that iLoad was in possession of all original Supporting Documentation evidencing that each and every of the iLoad Accounts contained within XPO Logistics Disputed Accounts were due payable in full to FleetOne without counterclaim or offset.

207. The purpose of the iLoad Misrepresentations was to induce FleetOne to make advances of funds to iLoad through the purchase of the XPO Logistics Accounts.

208. The iLoad Misrepresentations were false.

13B703507

209.     The iLoad Accounts contained within the Disputed XPO Logistics Invoices were inauthentic invoices/Accounts, were not bona fide Accounts that were the result of actual transportation services performed by iLoad for XPO Logistics, and were created by iLoad, Ilija, Kinga and Ewa for the purpose of inducing FleetOne to made Advances.

210.     iLoad, Ilija, Ewa and Kinga knew that the iLoad Misrepresentations were false when they made them.

211.     iLoad, Ilija, Kinga and Ewa each intended and knew that FleetOne would rely on the iLoad Misrepresentations in making advance of funds to iLoad.

212.     FleetOne did, in fact, reasonably rely on the iLoad Misrepresentations and advanced Seven Hundred Ninety-Nine Thousand Three Hundred Fifty-Eight and 14/100 Dollars ($799,358.14) to iLoad.

213.     As a result of its reliance on the iLoad Misrepresentations, FleetOne has incurred damages in the amount of One Million Seven Hundred Ninety-Seven Thousand Two Hundred Eighty and 82/100 Dollars ($1,797,280.82).

214.     As set forth in this Count V, iLoad received the Advances through the wrongful and fraudulent conduct of iLoad, Ilija, Kinga and Ewa.

215.     iLoad, Ilija, Kinga and Ewa each acted willfully and wantonly and each knowingly and intentionally made the iLoad Misrepresentations to FleetOne with a deliberate disregard to the truth, the rights of FleetOne and the risk of injury to FleetOne.

216.     As detailed herein, Ilija, Kinga and Ewa each personally enriched themselves with the FleetOne Advances received as a result of the iLoad Misrepresentations.

217.     FleetOne is entitled to an award of punitive and exemplary damages at the discretion of this Court against iLoad, Ilija, Kinga and Ewa, in an amount which includes as a

measure of the punitive damages the attorneys' fees, costs and expenses incurred by Plaintiffs in bringing this lawsuit and an amount not less than three times the amount of actual damages suffered by FleetOne to punish iLoad, Ilija, Kinga and Ewa to deter each of them and others from engaging in similar misconduct in the future.

218.     iLoad is also responsible for all attorneys' fees and costs and other expenses incurred by FleetOne relating to the iLoad Factoring Agreement and in this matter.  (Ex. 1-iLoad Factoring Agreement, ¶9.3)

219.     Ewa is also responsible for all attorneys' fees and costs and other expenses incurred by FleetOne relating to the iLoad Factoring Agreement, the iLoad Guaranty and in this matter. (Ex. 3- iLoad Guaranty, ¶17)

**WHEREFORE**, Plaintiff FleetOne Factoring, LLC prays for a judgment in its favor on Count V of the Complaint and against iLoad, Ilija, Kinga and Ewa, jointly and severally, for:

A.     All compensatory damages, which, as of February 28, 2017, are in the amount of One Million Seven Hundred Ninety-Seven Thousand Two Hundred Eighty and 82/100 Dollars ($1,797,280.82), plus prejudgment interest, including, but not limited to, interest at the Default Rate through judgment, contractual attorneys' fees and costs;

B.     Punitive and exemplary damages in an amount which includes as a measure of the punitive damages the attorneys' fees, costs and expenses incurred by FleetOne in bringing this lawsuit plus an amount not less than three times the amount of actual damages suffered by FleetOne;

C.     Alternatively, imposition of a constructive trust on the Advances in the possession of iLoad, Ilija, Kinga and/or Ewa as well as on any other assets and any proceeds that belong to

13B703507

FleetOne, and imposition of an equitable lien on all of the property of iLoad, Ilija, Kinga and/or Ewa for the benefit of Plaintiffs; and

  D.  For such other relief as this Court deems just and proper.

## COUNT VI
### (Common Law Fraud: WEX Bank v. Rivoj, Kinga, Ilija and Ewa)

  Plaintiff WEX Bank for its cause of action for common law fraud against Defendants Rivoj, Kinga, Ilija and Ewa, states and alleges as follows:

  220. Plaintiff WEX Bank incorporates by reference Paragraphs 1 through 165 above as Paragraph 220 of this Count VI as if fully set forth herein.

  221. Rivoj and Ewa expressly represented in the Rivoj Factoring Agreement that any Accounts submitted to WEX Bank for an Advance would, amongst other criteria, meet the following criteria:

  a. Rivoj is the sole and absolute owner of each Account offered for sale, each Account offered for sale is sold free and clear of any liens, security interests or encumbrances and all supporting documentation for each Account has been provided to WEX Bank;

  b. all terms governing each Account are accurately reflected in the invoice and supporting documentation and each Account sale is undisputed and represents a sum certain owed by an Account Debtor, without offset or counterclaim;

  c. each Account represents [Rivoj's] bona fide sale, delivery and acceptance or merchandise or full and complete performance of service to an Account Debtor;

  d. each Account shall be absolutely enforceable against the Account Debtor in accordance with the express terms of the invoice, whether as to price, terms,

13B703507

delivery, guaranty or quality. (Ex. 5-Rivoj Factoring Agreement, ¶ 5.2(a),(d),(f),(i), respectively)

222.    Since at least August 2016 through September 2016, each of Rivoj, Ilija, Ewa and Kinga additionally made the following representations and warranties to WEX Bank (collectively the "<u>Rivoj Misrepresentations</u>"):

    a.    submission of the Rivoj Accounts contained within the XPO Disputed Invoices to WEX Bank as Accounts;

    b.    that each and every of the Rivoj Accounts contained within the XPO Disputed Invoices, which are detailed in Exhibit 11 hereto, were bona fide Accounts created through transportation services performed by Rivoj for XPO Logistics;

    c.    that each and every of the Rivoj Accounts contained within the XPO Logistics Disputed Accounts, which are detailed in Exhibit 11 hereto, were Eligible Accounts in accordance with Section 3.1 the Rivoj Factoring Agreement (Ex. 5-Rivoj Factoring Agreement, ¶ 3.1);

    d.    that each and every of the Rivoj Accounts contained within the XPO Logistics Disputed Accounts, which are detailed in Exhibit 11 hereto, met the criteria contained in ¶ 5.2 of the Rivoj Factoring agreement as detailed in Paragraph 221 hereinabove;

    e.    that Rivoj was in possession of all original Supporting Documentation evidencing that each and every of the Rivoj Accounts contained within XPO Logistics Disputed Accounts were due payable in full to WEX Bank without counterclaim or offset.

223.     The purpose of the Rivoj Misrepresentations was to induce WEX Bank to make advances of funds to Rivoj through the purchase of the XPO Logistics Accounts.

224.     The Rivoj Misrepresentations were false.

225.     The Rivoj Accounts contained within the Disputed XPO Logistics Invoices were inauthentic invoices/Accounts, were not bona fide Accounts that were the result of actual transportation services performed by iLoad for XPO Logistics, and were created by iLoad, Ilija, Kinga and Ewa for the purpose of inducing WEX Bank to made Advances.

226.     Rivoj, Ilija, Ewa and Kinga knew that the iLoad Misrepresentations were false when they made them to WEX Bank.

227.     Rivoj, Ilija, Kinga and Ewa each intended and knew that WEX Bank would rely on the Rivoj Misrepresentations in making advance of funds to Rivoj.

228.     WEX Bank did, in fact, reasonably rely on the Rivoj Misrepresentations and advanced Ninety Seven Thousand Eight Hundred Eight and 41/100 Dollars ($97,808.41) to Rivoj.

229.     As a result of its reliance on the Rivoj Misrepresentations, WEX Bank has incurred damages in the amount of One Hundred Thirty-Seven Thousand One Hundred One and 51/100 Dollars ($137,101.51) as of February 28, 2017.

230.     As set forth in this Count VI, Rivoj received the Advances through the wrongful and fraudulent conduct of Rivoj, Ilija, Kinga and Ewa.

231.     Rivoj, Ilija, Kinga and Ewa each acted willfully and wantonly and each knowingly and intentionally made the Rivoj Misrepresentations to WEX Bank with a deliberate disregard to the truth, the rights of WEX Bank and the risk of injury to WEX Bank.

13B703507

232.   Ilija, Kinga and Ewa each personally enriched themselves with the WEX Bank Advances received as a result of the Rivoj Misrepresentations.

233.   WEX Bank is entitled to an award of punitive and exemplary damages at the discretion of this Court against Rivoj, Ilija, Kinga and Ewa, in an amount which includes as a measure of the punitive damages the attorneys' fees, costs and expenses incurred by Plaintiffs in bringing this lawsuit and an amount not less than three times the amount of actual damages suffered by WEX Bank to punish Rivoj, Ilija, Kinga and Ewa to deter each of them and others from engaging in similar misconduct in the future.

234.   Rivoj is also responsible for all attorneys' fees and costs and other expenses incurred by WEX Bank relating to the Rivoj Factoring Agreement and in this matter.  (Ex. 5-Rivoj Factoring Agreement, ¶9.3)

235.   Ewa is also responsible for all attorneys' fees and costs and other expenses incurred by WEX Bank relating to the Rivoj Factoring Agreement, the Rivoj Guaranty and in this matter. (Ex. 7- Rivoj Guaranty, ¶17)

**WHEREFORE**, Plaintiff WEX Bank prays for a judgment in its favor on Count VI of the complaint and against Rivoj, Ilija, Kinga and Ewa, jointly and severally, for:

A.   All compensatory damages, which, as of February 28, 2017, are in the amount of One Hundred Thirty-Seven Thousand One Hundred One and 51/100 Dollars ($137,101.51), plus prejudgment interest, including, but not limited to, interest at the Default Rate through judgment, contractual attorneys' fees and costs;

B.   Punitive and exemplary damages in an amount which includes as a measure of the punitive damages the attorneys' fees, costs and expenses incurred by WEX Bank in bringing this

13B703507

lawsuit plus an amount not less than three times the amount of actual damages suffered by WEX Bank;

C.      Alternatively, imposition of a constructive trust on the Advances in the possession of Rivoj, Ilija, Kinga and/or Ewa as well as on any other assets and any proceeds that belong to WEX Bank, and imposition of an equitable lien on all of the property of Rivoj, Ilija, Kinga and/or Ewa for the benefit of WEX Bank; and

D.      For such other relief as this Court deems just and proper.

### COUNT VII
**(RICO – Action for Violations of 18 U.S.C. § 1962(c):**
**FleetOne and WEX Bank v. iLoad, Rivoj, Ilija, Kinga and Ewa)**

Plaintiffs FleetOne and WEX Bank for their cause of action for common law fraud against Defendants iLoad, Rivoj, Ilija, Kinga and Ewa, state and allege as follows:

236.    Plaintiffs FleetOne and WEX Bank incorporate by reference Paragraphs 1 through 165 above as Paragraph 236 of this Count VII as if fully set forth herein.

237.    WEX Bank is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962.

238.    FleetOne is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962.

239.    Ilija is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962.

240.    Kinga is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962.

241.    Ewa is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962.

242.    iLoad is a "person" within the meaning of 18 U.S.C. § 1961(3) and 1962.

243.    Rivoj is a "person" within the meaning of 18 U.S.C. § 1961(3) and 1962.

244.    iLoad, Rivoj, Kinga, Ilija and Ewa are an "enterprise" (the "Enterprise") within the meaning of 18 U.S.C. §§ 1961(4) and 1962 because they are a group of individuals and corporations associated in fact, although not a legal entity, with the purpose of operating the

various entities affiliated with iLoad, Rivoj, Kinga, Ilija and Ewa, including but not limited to, Lollipop, KA Leasing Group, ReLoad LLC, iLoad Truck Repair, iLoad International Holdings, iTruck Repair Shop, iMex Logistics, Inc., Trucker Stars Inc., and Kinga Licensing Inc.

245.    The Enterprise is based in and operates out of the State of Illinois;

246.    The Enterprise is engaged in interstate commerce in that:

    a.    The Enterprise regularly transmits payments and disbursements via checks mailed through the United States Postal Service;

    b.    The Enterprise regularly sends and receives electronic transfers of funds using interstate wire services;

    c.    As set forth herein, the Enterprise engaged in a series of financial transactions with FleetOne, which is based in and operates out of Tennessee, and WEX Bank, which is based in and operates out of Utah.

247.    At some point prior to or after the iLoad Factoring Agreement and Rivoj Factoring Agreement were executed, the Enterprise devised a scheme to defraud WEX Bank and FleetOne in order to obtain money by means of false and fraudulent purposes.

248.    In furtherance of the scheme to defraud Plaintiffs, the members of the Enterprise each made the iLoad Misrepresentations and the Rivoj Misrepresentations detailed in Paragraphs 206 and 222 hereinabove, which are expressly incorporated by reference as if fully set forth herein.

249.    In furtherance of the scheme to defraud Plaintiffs, the Enterprise represented to WEX Bank and FleetOne that the XPO Logistics Disputed Accounts were Eligible Accounts under the respective iLoad Factoring Agreement and Rivoj Factoring Agreement in order to

41

induce WEX Bank and FleetOne to make Advances under the respective factoring agreements and obtain the iLoad Advances and Rivoj Advances.

250.    As detailed hereinabove, including in, but not limited to, the iLoad Misrepresentations and the Rivoj Misrepresentations, the Enterprise represented to WEX Bank and FleetOne that the XPO Logistics Disputed Accounts were Eligible Accounts under the respective iLoad Factoring Agreement and Rivoj Factoring Agreement in order to induce WEX Bank and FleetOne to make Advances under the respective factoring agreements and obtain the iLoad Advances and Rivoj Advances.

251.    As alleged, without limitation, in Paragraphs 125 through 127 hereinabove, each of the eight hundred eighty one (881) XPO Disputed Invoices, which are detailed and specifically identified in Exhibit 11 hereto, were false and contained misstatements of fact and intent, specifically:

      a.  Each and every of the iLoad Accounts contained within the Disputed XPO Logistics Invoices were false and inauthentic invoices/Accounts;

      b.  Each and every of the iLoad Accounts contained within the Disputed XPO Logistics Invoices were not bona fide Accounts that were the result of actual transportation services performed by iLoad for XPO Logistics;

      c.  Each and every of the Rivoj Accounts contained within the Disputed XPO Logistics Invoices were false and inauthentic invoices/Accounts;

      d.  Each and every of the Rivoj Accounts contained within the Disputed XPO Logistics Invoices were not bona fide Accounts that were the result of actual transportation services performed by iLoad for XPO Logistics.

13B703507

252.    Each of the eight hundred eighty one (881) XPO Disputed Invoices, which are detailed and specifically identified in Exhibit 11 hereto, and were created on by iLoad, Rivoj, Kinga, Ilija and Ewa on behalf of the Enterprise for the purpose of inducing Plaintiffs to made Advances.

253.    The XPO Disputed Invoices were submitted by the members of the Enterprise to Plaintiffs by means of electronic submission and by the mail.

254.    All submissions of the XPO Disputed Invoices crossed interstate lines as the Enterprise was conducted in Illinois and Plaintiffs conduct business and received the transmissions in Tennessee and Utah.

255.    Plaintiffs in fact did make Advances to iLoad and Rivoj in reliance on the XPO Disputed Invoices: FleetOne advanced Seven Hundred Ninety-Nine Thousand Three Hundred Fifty-Eight and 14/100 Dollars ($799,358.14) to iLoad; and WEX Bank advanced Ninety Seven Thousand Eight Hundred Eight and 41/100 Dollars ($97,808.41) to Rivoj.

256.    During the period from at least April 2016 through September 2016, 881 transmissions of false invoices totaling Eight Hundred Ninety Seven Thousand One Hundred Sixty-Six and 55/100 Dollars ($897,166.55) were submitted via mail or wire transfer to Plaintiffs, of which 735 transmissions of false invoices totaling Seven Hundred Ninety-Nine Thousand Three Hundred Fifty-Eight and 14/100 Dollars ($799,358.14) were submitted via mail or wire transfer to FleetOne in Tennessee and 146 transmissions of false invoices totaling Ninety Seven Thousand Eight Hundred Eight and 41/100 Dollars ($97,808.41) were submitted via mail or wire transfer to WEX Bank in Utah.

257.    Each of the 881 XPO Disputed Invoices submitted by the members of the Enterprise to Plaintiffs by mail in furtherance of the scheme or artifice alleged herein which was

43

transmitted by use of the United States Postal Service or any private or commercial interstate carrier constitutes an act of "mail fraud" within the meaning of 18 U.S.C. § 1341.

258.    Each of the 881 XPO Disputed Invoices submitted by the members of the Enterprise to Plaintiffs by electronic submission via interstate wire in furtherance of the scheme or artifice alleged herein constitutes an act of "wire fraud" within the meaning of 18 U.S.C. § 1343.

259.    By definition, each act of mail fraud and each act of wire fraud described herein constitutes "racketeering activity" within the meaning of 18 U.S.C. § 1961(1).

260.    The numerous, continuous and related ongoing acts of wire fraud and mail fraud alleged herein, 881 incidents, establish a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

261.    18 U.S.C. § 1962(c) provides that "it shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

262.    The acts complained of in this Count VII have resulted in injury to the Plaintiffs in their business and property.

263.    As a result of the fraudulent scheme described herein, FleetOne was injured in its business and property. FleetOne advanced Seven Hundred Ninety-Nine Thousand Three Hundred Fifty-Eight and 14/100 Dollars ($799,358.14) to iLoad and FleetOne has incurred damages in the amount of One Million Seven Hundred Ninety-Seven Thousand Two Hundred Eighty and 82/100 Dollars ($1,797,280.82).

13B703507

264. As a result of the fraudulent scheme described herein, WEX Bank was injured in its business and property. WEX Bank advanced Ninety Seven Thousand Eight Hundred Eight and 41/100 Dollars ($97,808.41) to Rivoj in reliance on the XPO Disputed Invoices and WEX Bank has incurred damages in the amount of One Hundred Thirty-Seven Thousand One Hundred One and 51/100 Dollars ($137,101.51) as of February 28, 2017.

**WHEREFORE**, Plaintiffs FleetOne Factoring, LLC and WEX Bank pray for a judgment in their favor on Count VII of the Complaint and against iLoad, Rivoj, Ilija, Kinga and Ewa and request that this Court issue an Order finding that:

A. The association in fact of iLoad, Rivoj, Ilija, Kinga and Ewa is an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962;

B. The Enterprise is engaged in, or its activities affect, interstate commerce;

C. Each of iLoad, Rivoj, Ilija, Kinga and Ewa are persons employed by or associated with the Enterprise;

D. Each of iLoad, Rivoj, Ilija, Kinga and Ewa have conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity.

E. The actions of iLoad, Rivoj, Ilija, Kinga and Ewa, aforesaid, have resulted in injury to the business and property of Plaintiffs;

F. Plaintiff FleetOne was damaged in the amount of One Million Seven Hundred Ninety-Seven Thousand Two Hundred Eighty and 82/100 Dollars ($1,797,280.82), plus prejudgment interest thereon;

G. Plaintiff WEX Bank was damaged in the amount of One Hundred Thirty-Seven Thousand One Hundred One and 51/100 Dollars ($137,101.51)

H. Plaintiffs are entitled to all allowable damages provided for in 18 U.S.C. § 1964(c), including *threefold* the damages they sustained and the costs of suit, including a reasonable attorneys' fee, and entry of judgment, jointly and severally, against each of iLoad, Rivoj, Ilija, Kinga and Ewa, accordingly;

I. That iLoad, Rivoj, Kinga Ilija and Ewa be ordered to disgorge all proceeds derived from any violation of 18 U.S.C. § 1962(c);

J.    That a preliminary and/or permanent injunction be issued:

    i.    Prohibiting iLoad, Rivoj, Kinga Ilija and Ewa and each of their successors, officers, employees, and all persons acting in concert with them, from committing any act of racketeering, as defined in 18 U.S.C. § 1961(1);

    ii.    Enjoining and restraining iLoad, Rivoj, Kinga Ilija and Ewa from participating in any way, directly or indirectly, in the management and/or control of any of the affairs of any of the affiliated entities, including, but not limited to, Lollipop, KA Leasing Group, iLoad Truck Repair, iLoad International Holdings, ReLoad LLC, iTruck Repair Shop, iMex Logistics, Inc., Trucker Stars Inc., and Kinga Licensing Inc., or any successor entities engaged in acts of racketeering, and from having any dealings about any matter that relates directly or indirectly to the management and/or control of said entities, or any successor or affiliated entities known to them to be engaged in acts of racketeering;

    iii.    Enjoining iLoad, Rivoj, Kinga, Ilija and Ewa from making false, misleading or deceptive statements or representations concerning the sale of accounts; and

    iv.    Ordering iLoad, Rivoj, Kinga, Ilija and Ewa to disclose and make available to Plaintiffs all documents and other materials relating to the XPO Disputed Accounts.

## COUNT VIII
### (Fraudulent Transfer: FleetOne v. Ilija)

Plaintiff FleetOne for its cause of action for fraudulent transfer against Defendant Ilija states and alleges as follows:

265.    Plaintiffs incorporate by reference Paragraphs 1 through 165 above as Paragraph 265 of this Count VIII as if fully set forth herein.

266.    As set forth herein, iLoad made transfers totaling $185,000.00 to and for the benefit of Ilija for which iLoad received no reasonably equivalent value in exchange and which were intended to hinder, delay or and defraud iLoad's creditors, including but not limited to FleetOne.

267.    From on or about December 31, 2015 through January 26, 2016, iLoad transferred a total of $185,000.00 to Ilija, as follows:

a. $20,000.00 to Ilija via check no. 5168, dated December 31, 2015 and which cleared on January 6, 2016;

b. $18,000.00 to Ilija via check no. 5215, dated January 5, 2016 and which cleared on January 7, 2016;

c. $16,000.00 to Ilija via check no. 5259, dated January 5, 2016 and which cleared on January 7, 2016;

d. $17,000.00 to Ilija via check no. 5264, dated January 7, 2016 and which cleared on January 11, 2016;

e. $25,000.00 to Ilija via check no. 5312, dated January 13, 2016 and which cleared on January 19, 2016;

f. $10,000.00 to Ilija via check no. 5332, dated January 11, 2016 and which cleared on January 13, 2016;

g. $14,000.00 to Ilija via check no. 5351, dated January 13, 2016 and which cleared on January 15, 2016;

h. $15,000.00 to Ilija via check no. 5292, dated January 15, 2016 and which cleared on January 20, 2016;

i. $19,000.00 to Ilija via check no. 5348, dated January 18, 2016 and which cleared on January 21, 2016;

j. $20,000.00 to Ilija via check no. 5447, dated January 20, 2016 and which cleared on January 21, 2016;

k. $11,000.00 to Ilija via check no. 5572, dated January 26, 2016 and which cleared on January 29, 2016;

13B703507

268. The foregoing transfers identified in Paragraph 267 (the "Ilija Transfers") constitute fraudulent transfers pursuant to the Illinois Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS 106/5(a)(1), because they were made with the actual intent to hinder, delay or defraud FleetOne with respect to the Outstanding iLoad Accounts owed pursuant to the FleetOne Advances.

269. The Ilija Transfers constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/5(a)(2), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad intended to incur, or believed, or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

270. The Ilija Transfers constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/6(a), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad was insolvent at the time of the transfers or became insolvent as a result of the transfers.

271. The Ilija Transfers were fraudulent and should be avoided for the following reasons, including but not limited to:

    a. the transfers were made with the actual intent to defraud FleetOne;

    b. The transfers were made to an insider;

    c. iLoad did not receive reasonably equivalent value in exchange for the transfers;

    d. iLoad was functionally insolvent or became functionally insolvent shortly after the transfers were made;

    e. The transfers occurred shortly after and during the period in which the substantial debt to FleetOne via the FleetOne Advances was incurred; and/or

f.   Before certain of the transfers were made, iLoad had been sued or was threatened with being sued.

272.   Plaintiffs have not been provided with complete banking information from iLoad and, upon information and belief, additional fraudulent transfers from iLoad to Ilija may exist which may be discovered during the pendency of this lawsuit.

**WHEREFORE,** FleetOne respectfully requests that this Court enter judgment in its favor on Count VIII of the Complaint against Ilija and enter an order granting any or all of the following relief:

A.   Declaring that the Ilija Transfers be deemed fraudulent and declared null and void to the full extent of the Outstanding iLoad Accounts;

B.   Avoiding the fraudulent Ilija Transfers made by iLoad to Ilija;

C.   Compelling Ilija to immediately disgorge to FleetOne the sum of at least $185,000.00 or any greater amount proven at trial to constitute fraudulent transfers for purposes Sections 5 and 6 of the UFTA (740 ILCS 160/5, 160/6);

D.   Entering judgment in FleetOne's favor and against Ilija in an amount equal to the Ilija Transfers;

E.   Awarding such other relief as the circumstances may require pursuant to 740 ILCS 160/8(a), or that this court deems reasonable and just.

## COUNT IX
### (Fraudulent Transfer: FleetOne v. Kinga)

Plaintiff FleetOne for its cause of action for fraudulent transfer against Defendant Kinga states and alleges as follows:

273.   Plaintiffs incorporate by reference Paragraphs 1 through 165 above as Paragraph 273 of this Count IX as if fully set forth herein.

274.     As set forth herein, iLoad made transfers totaling $254,500.00 to and for the benefit of Kinga for which iLoad received no reasonably equivalent value in exchange and which were intended to hinder, delay or and defraud iLoad's creditors, including, but not limited to, FleetOne.

275.     From on or about December 31, 2015 through January 26, 2016, iLoad transferred a total of $254,500.00 to Kinga, as follows:

     a.  $20,000.00 to Kinga via check no. 5122, dated December 31, 2015 and which cleared on January 4, 2016;

     b.  $10,000.00 to Kinga via check no. 5206, dated January 4, 2016 and which cleared on January 6, 2016;

     c.  $24,500.00 to Kinga via check no. 5210, dated December 31, 2015 and which cleared on January 6, 2016;

     d.  $19,000.00 to Kinga via check no. 5214, dated January 5, 2016 and which cleared on January 7, 2016;

     e.  $20,000.00 to Kinga via check no. 5258, dated January 6, 2016 and which cleared on January 8, 2016;

     f.  $14,000.00 to Kinga via check no. 5263, dated January 7, 2016 and which cleared on January 11, 2016;

     g.  $19,000.00 to Kinga via check no. 5313, dated January 13, 2016 and which cleared on January 19, 2016;

     h.  $15,000.00 to Kinga via check no. 5341, dated January 12, 2016 and which cleared on January 14, 2016;

13B703507

i. $17,000.00 to Kinga via check no. 5350, dated January 13, 2016 and which cleared on January 15, 2016;

j. $10,000.00 to Kinga via check no. 5352, dated January 13, 2016 and which cleared on January 15, 2016;

k. $13,000.00 to Kinga via check no. 5391, dated January 15, 2016 and which cleared on January 20, 2016;

l. $17,000.00 to Kinga via check no. 5436, dated January 19, 2016 and which cleared on January 21, 2016;

m. $20,000.00 to Kinga via check no. 5495, dated January 21, 2016 and which cleared on January 26, 2016;

n. $20,000.00 to Kinga via check no. 5554, dated January 25, 2016 and which cleared on January 29, 2016;

o. $16,000.00 to Kinga via check no. 5576, dated January 26, 2016 and which cleared on February 1, 2016;

276.    The foregoing transfers identified in Paragraph 275 (the "Kinga Transfers") constitute fraudulent transfers pursuant to the Illinois Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS 106/5(a)(1), because they were made with the actual intent to hinder, delay or defraud FleetOne with respect to the Outstanding iLoad Accounts owed pursuant to the FleetOne Advances.

277.    The Kinga Transfers constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/5(a)(2), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad intended to incur, or believed, or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

13B703507

278.    The Kinga Transfers constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/6(a), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad was insolvent at the time of the transfers or became insolvent as a result of the transfers.

279.    The Kinga Transfers were fraudulent and should be avoided for the following reasons, including but not limited to:

    a.  The transfers were made with the actual intent to defraud FleetOne;

    b.  The transfers were made to an insider;

    c.  iLoad did not receive reasonably equivalent value in exchange for the transfers;

    d.  iLoad was functionally insolvent or became functionally insolvent shortly after the transfers were made;

    e.  The transfers occurred shortly after and during the period in which the substantial debt to FleetOne via the FleetOne Advances was incurred; and/or

    f.  Before certain of the transfers were made, iLoad had been sued or was threatened with being sued.

280.    Plaintiffs have not been provided with complete banking information from iLoad and, upon information and belief, additional fraudulent transfers from iLoad to Kinga may exist which may be discovered during the pendency of this lawsuit.

**WHEREFORE,** FleetOne respectfully requests that this Court enter judgment in its favor on Count IX of the Complaint against Kinga and enter an order granting any or all of the following relief:

A.    Declaring that the Kinga Transfers be deemed fraudulent and declared null and void to the full extent of the Outstanding iLoad Accounts;

52

13B703507

B.      Avoiding the fraudulent Kinga Transfers made by iLoad to Kinga;

C.      Compelling Kinga to immediately disgorge to FleetOne the sum of at least $254,500.00 or any greater amount proven at trial to constitute fraudulent transfers for purposes Sections 5 and 6 of the UFTA (740 ILCS 160/5, 160/6);

D.      Entering judgment in FleetOne's favor and against Kinga in an amount equal to the Kinga Transfers;

E.      Awarding such other relief as the circumstances may require pursuant to 740 ILCS 160/8(a), or that this court deems reasonable and just.

## COUNT X
### (Fraudulent Transfer: FleetOne v. Ewa)

Plaintiff FleetOne for its cause of action of fraudulent transfer against Defendant Ewa states and alleges as follows:

281.    Plaintiffs incorporate by reference Paragraphs 1 through 165 above as Paragraph 281 of this Count X as if fully set forth herein.

282.    As set forth herein, iLoad made transfers totaling $14,870.00 to and for the benefit of Ewa for which iLoad received no reasonably equivalent value in exchange and which were intended to hinder, delay or and defraud iLoad's creditors, including, but not limited to, FleetOne.

283.    From on or about January 6, 2016 through April 2, 2016, iLoad transferred a total of $14,870.00 to Ewa, as follows:

    a.   $1,650.00 to Ewa via check no. 5257, dated January 6, 2016 and which cleared on January 7, 2016;

    b.   $2,600.00 to Ewa via check no. 5314, dated January 13, 2016 and which cleared on January 15, 2016;

13B703507

     c.   $1,720.00 to Ewa via check no. 5784, dated February 8, 2016 and which cleared on February 9, 2016;

     d.   $2,600.00 to Ewa via check no. 5839, dated February 11, 2016 and which cleared on February 12, 2016;

     e.   $3,000.00 to Ewa via check no. 6381, dated March 9, 2016 and which cleared on March 14, 2016;

     f.   $3,300.00 to Ewa via check no. 6999, dated April 2, 2016 and which cleared on April 12, 2016;

284.    The foregoing transfers identified in Paragraph 283 (the "Ewa Transfers") constitute fraudulent transfers pursuant to the Illinois Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS 106/5(a)(1), because they were made with the actual intent to hinder, delay or defraud FleetOne with respect to the Outstanding iLoad Accounts owed pursuant to the FleetOne Advances.

285.    The Ewa Transfers constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/5(a)(2), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad intended to incur, or believed, or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

286.    The Ewa Transfers constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/6(a), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad was insolvent at the time of the transfers or became insolvent as a result of the transfers.

287.    The Ewa Transfers were fraudulent and should be avoided for the following reasons, including but not limited to:

13B703507

a. The transfers were made with the actual intent to defraud FleetOne;

b. The transfers were made to an insider;

c. iLoad did not receive reasonably equivalent value in exchange for the transfers;

d. iLoad was functionally insolvent or became functionally insolvent shortly after the transfers were made;

e. The transfers occurred shortly after and during the period in which the substantial debt to FleetOne via the FleetOne Advances was incurred; and/or

f. Before certain of the transfers were made, iLoad had been sued or was threatened with being sued.

288.    Plaintiffs have not been provided with complete banking information from iLoad and, upon information and belief, additional fraudulent transfers from iLoad to Ewa may exist which may be discovered during the pendency of this lawsuit.

**WHEREFORE,** FleetOne respectfully requests that this Court enter judgment in its favor on Count X of the Complaint against Ewa and enter an order granting any or all of the following relief:

A.    Declaring that the Ewa Transfers be deemed fraudulent and declared null and void to the full extent of the Outstanding iLoad Accounts;

B.    Avoiding the fraudulent Ewa Transfers made by iLoad to Ewa;

C.    Compelling Ewa to immediately disgorge to FleetOne the sum of at least $14,870.00 or any greater amount proven at trial to constitute fraudulent transfers for purposes Sections 5 and 6 of the UFTA (740 ILCS 160/5, 160/6);

D.    Entering judgment in FleetOne's favor and against Ewa in an amount equal to the Ewa Transfers;

13B703507

E.     Awarding such other relief as the circumstances may require pursuant to 740 ILCS 160/8(a), or that this court deems reasonable and just.

## COUNT XI
### (Fraudulent Transfer: FleetOne v. Ilija, Kinga and Ewa)

Plaintiff FleetOne for its cause of action for fraudulent transfer against Defendants Ilija, Kinga and Ewa states and alleges as follows:

289.    Plaintiffs incorporate by reference Paragraphs 1 through 165 above as Paragraph 289 of this Count XI as if fully set forth herein.

290.    As set forth herein, iLoad made transfers totaling $833,039.15 indirectly to and for the direct benefit of Ilija, Kinga and/or Ewa for which iLoad received no reasonably equivalent value in exchange and which were intended to hinder, delay or and defraud iLoad's creditors, including, but not limited to, FleetOne.

291.    From on or about January 4, 2016 through August 29, 2016, iLoad transferred a total of $699,812.28 indirectly to Ilija, Kinga and/or Ewa via payments to various credit card companies for the payment of personal and other expenses of Ilija, Kinga and Ewa, which directly benefitted Ilija, Kinga and/or Ewa. Due to the numerosity of these transactions, the specific transfers are detailed on Exhibit 12 hereto. Each of the transfers identified on Exhibit 12 are collectively referred to as the "Credit Card Transfers".

292.    From on or about January 4, 2016 through August 30, 2016, iLoad transferred a total of $133,226.87 indirectly to Ilija, Kinga and/or Ewa via payments to various automotive finance companies for the payment of personal and other expenses of Ilija, Kinga and Ewa, which directly benefitted Ilija, Kinga and/or Ewa. Due to the numerosity of these transactions, the specific transfers are detailed on Exhibit 13 hereto. Each of the transfers identified on Exhibit 13 are collectively referred to as the "Automotive Transfers".

13B703507

293.    The Credit Card Transfers and the Automotive Transfers identified in Exhibits 12 and 13 constitute fraudulent transfers pursuant to the Illinois Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS 106/5(a)(1), because they were made with the actual intent to hinder, delay or defraud FleetOne with respect to the Outstanding iLoad Accounts owed pursuant to the FleetOne Advances.

294.    The Credit Card Transfers and the Automotive Transfers identified in Exhibits 12 and 13 constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/5(a)(2), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad intended to incur, or believed, or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

295.    The Credit Card Transfers and the Automotive Transfers identified in Exhibits 12 and 13 constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/6(a), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad was insolvent at the time of the transfers or became insolvent as a result of the transfers.

296.    The Credit Card Transfers and the Automotive Transfers identified in Exhibits 12 and 13 were fraudulent and should be avoided for the following reasons, including but not limited to:

    a.  The transfers were made with the actual intent to defraud FleetOne;

    b.  The transfers were made for the benefit of insiders;

    c.  iLoad did not receive reasonably equivalent value in exchange for the transfers;

    d.  iLoad was functionally insolvent or became functionally insolvent shortly after the transfers were made;

e. The transfers occurred shortly after and during the period in which the substantial debt to FleetOne via the FleetOne Advances was incurred; and/or

f. Before certain of the transfers were made, iLoad had been sued or was threatened with being sued.

297. Plaintiffs have not been provided with complete banking information from iLoad and, upon information and belief, additional fraudulent transfers from iLoad for the benefit of Ilija, Kinga and/or Ewa may exist which may be discovered during the pendency of this lawsuit.

**WHEREFORE,** FleetOne respectfully requests that this Court enter judgment in its favor on Count XI of the Complaint against Ilija, Kinga and Ewa, jointly and severally, and enter an order granting any or all of the following relief:

A. Declaring that the Credit Card Transfers and Automotive Transfers be deemed fraudulent and declared null and void to the full extent of the Outstanding iLoad Accounts;

B. Avoiding the fraudulent Credit Card Transfers and Automotive Transfers made by iLoad for the benefit of Ilija, Kinga and/or Ewa;

C. Compelling Ilija, Kinga and Ewa to immediately disgorge to FleetOne the sum of at least $833,039.15 or any greater amount proven at trial to constitute fraudulent transfers for purposes Sections 5 and 6 of the UFTA (740 ILCS 160/5, 160/6);

D. Entering judgment in FleetOne's favor and against Ilija, Kinga and Ewa, jointly and severally, in an amount equal to the Credit Card Transfers and Automotive Transfers;

E. Awarding such other relief as the circumstances may require pursuant to 740 ILCS 160/8(a), or that this court deems reasonable and just.

13B703507

## COUNT XII
**(Fraudulent Transfer: FleetOne v. ReLoad LLC, ReLoad Inc., Preston Carter, Adam White, James Elsea, Roza Josifova, Enbravia, Inc.)**

Plaintiff FleetOne for its cause of action for fraudulent transfer against Defendants ReLoad LLC, ReLoad Inc., Preston Carter, Adam White, James Elsea, Roza Josifova and Enbravia, Inc. ("Enbravia"), states and alleges as follows:

298. Plaintiffs incorporate by reference Paragraphs 1 through 165 above as Paragraph 298 of this Count XII as if fully set forth herein.

299. ReLoad Inc., is corporation that was incorporated in the State of Illinois on or about November 9, 2007 and which was involuntarily dissolved by the Illinois Secretary of State on or about April 14, 2017.

300. ReLoad LLC, is an Illinois limited liability company that was formed and registered with the Illinois Secretary of State on or about August 26, 2016.

301. Ilija was the Chief Executive Officer of ReLoad, Inc., and upon information and belief, was a shareholder of ReLoad Inc.

302. Ilija is a manager of ReLoad LLC, and upon information and belief, is a member of ReLoad LLC.

303. ReLoad Inc., and ReLoad LLC, shared the same common registered agent address and principal office address.

304. Upon information and belief, ReLoad LLC is the successor to ReLoad Inc.

305. Upon information and belief, ReLoad LLC utilizes the same workforce as ReLoad Inc., has some or all of the same owners, performs the same services and generally continued the business of ReLoad Inc.

306. As set forth herein, iLoad made transfers totaling $49,193.14 to and for the benefit of ReLoad Inc., for which iLoad received no reasonably equivalent value in exchange and which were intended to hinder, delay or and defraud iLoad's creditors, including, but not limited to, FleetOne.

307. From on or about March 18, 2016 through April 15, 2016, iLoad transferred a total of $33,460.76 to ReLoad Inc., via transfers to executives of ReLoad Inc., as payment of their ReLoad wages and/or salaries, as follows:

  a. $3,076.93 to Chris Shelhamer, ReLoad CMA, via check no. 6563, dated March 18, 2016 and which cleared on March 21, 2016;

  b. $5,000.00 to Preston Carter, ReLoad HR, via check no. 6565, dated March 19, 2016 and which cleared on March 25, 2016;

  c. $5,769.23 to Adam White, ReLoad COO via check no. 6564, dated March 28, 2016 and which cleared on March 28, 2016;

  d. $3,076.00 to Chris Shelhamer, ReLoad CMA, via check no. 6820, dated April 5, 2016 and which cleared on April 5, 2016;

  e. $5,769.32 to Adam White, ReLoad COO, via check no. 6822, dated April 1, 2016 and which cleared on April 11, 2016;

  f. $2,884.62 to James Elsea, Reload Operations Director, via check no. 7177, dated April 15, 2016 and which cleared on April 20, 2016;

  g. $5,000.00 to Preston Carter, Reload HR, via check no. 7178, dated April 15, 2016 and which cleared on April 20, 2016.

13B703507

308.    From on or about January 26, 2016 through April 12, 2016, iLoad transferred a total of $15,732.42 to ReLoad Inc., via transfers to vendors of ReLoad Inc., for ReLoad's outstanding obligations as follows:

      a.    $599.20 to ML Sullivan Insurance Agency via check no. 5563, dated January 26, 2016 and which cleared on February 4, 2016;

      b.    $1,723.33 to Roza Josifova via check no. 6011, dated February 22, 2016 and which cleared on February 22, 2016;

      c.    $3,500.00 to Enbravia via check no. 6274, dated March 7, 2016 and which cleared on March 9, 2016;

      d.    $2,000.00 to Enbravia via check no. 6205, dated March 21, 2016 and which cleared on April 6, 2016;

      e.    $4,500.00 to Enbravia via check no. 6275, dated March 21, 2016 and which cleared on April 6, 2016;

      f.    $1,705.00 to CATS Transport via check no. 6934, dated April 4, 2016 and which cleared on April 7, 2016;

      g.    $1,705.00 to CATS Transport via check no. 7074, dated April 12, 2016 and which cleared on April 15, 2016.

309.    The foregoing transfers identified in Paragraphs 307 and 308 (the "ReLoad Transfers") were made by iLoad to and for the benefit of ReLoad Inc., ReLoad LLC, Preston Carter, Adam White, James Elsea, Roza Josifova, Enbravia and CATS Transport (the "ReLoad Transferees").

310.    ReLoad LLC received the full benefit of the ReLoad Transfers and is liable to FleetOne for the full extent of the ReLoad Transfers because it is the successor to ReLoad Inc.

13B703507

311. The ReLoad Transfers constitute fraudulent transfers pursuant to the Illinois Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS 106/5(a)(1), because they were made with the actual intent to hinder, delay or defraud FleetOne with respect to the Outstanding iLoad Accounts owed pursuant to the FleetOne Advances.

312. The ReLoad Transfers constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/5(a)(2), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad intended to incur, or believed, or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

313. The Reload Transfers constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/6(a), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad was insolvent at the time of the transfers or became insolvent as a result of the transfers.

314. The Reload Transfers to the ReLoad Transferees were fraudulent and should be avoided for the following reasons, including but not limited to:

    a. The transfers were made with the actual intent to defraud FleetOne;

    b. The transfers were made to an insider or assets controlled by insiders because Ilija was the CEO of ReLoad Inc. and is a manager of ReLoad LLC;

    c. iLoad did not receive reasonably equivalent value in exchange for the transfers;

    d. iLoad was functionally insolvent or became functionally insolvent shortly after the transfers were made;

    e. The transfers occurred shortly after and during the period in which the substantial debt to FleetOne via the FleetOne Advances was incurred; and/or

f. Before certain of the transfers were made, iLoad had been sued or was threatened with being sued.

315. Plaintiffs have not been provided with complete banking information from iLoad and, upon information and belief, additional fraudulent transfers from iLoad to the ReLoad Transferees may exist which may be discovered during the pendency of this lawsuit.

**WHEREFORE,** FleetOne respectfully requests that this Court enter judgment in its favor on Count XII of the Complaint against ReLoad LLC, ReLoad Inc., Preston Carter, Adam White, James Elsea, Roza Josifova and Enbravia, Inc., jointly and severally, and enter an order granting any or all of the following relief:

A. Declaring that the ReLoad Transfers to the ReLoad Transferees be deemed fraudulent and declared null and void to the full extent of the Outstanding iLoad Accounts;

B. Avoiding the fraudulent ReLoad Transfers made by iLoad to the ReLoad Transferees;

C. Compelling the ReLoad Transferees to immediately disgorge to FleetOne the sum of at least $49,193.14 or any greater amount proven at trial to constitute fraudulent transfers for purposes Sections 5 and 6 of the UFTA (740 ILCS 160/5, 160/6);

D. Entering judgment in FleetOne's favor and against the ReLoad Transferees, jointly and severally, in an amount equal to the ReLoad Transfers to the ReLoad Transferees;

E. Awarding such other relief as the circumstances may require pursuant to 740 ILCS 160/8(a), or that this court deems reasonable and just.

## COUNT XIII
### (Fraudulent Transfer: FleetOne v. Business Transportation Specialists)

Plaintiff FleetOne for its cause of action for fraudulent transfer against Defendant Business Transportation Specialists, LLC, states and alleges as follows:

13B703507

316.     Plaintiffs incorporate by reference Paragraphs 1 through 165 above as Paragraph 316 of this Count XIII as if fully set forth herein.

317.     Ilija is the manager and CEO of ReLoad.

318.     Brian Delipara is the Director of Carrier Sales at ReLoad and is also the Manager of Business Transportation Specialists, LLC ("BTS").

319.     As set forth herein, iLoad made transfers totaling $143,888.00 to BTS for which iLoad received no reasonably equivalent value in exchange and which were intended to hinder, delay or and defraud iLoad's creditors, including, but not limited, to FleetOne.

320.     On or about February 5, 2016, iLoad transferred funds totaling $143,888.00 to BTS as follows:

a.   $51,400.00 to BTS via check no. 5735, dated February 5, 2016, which cleared on February 17, 2016;

b.   $44,397.00 to BTS via check no. 5734, dated February 5, 2016, which cleared on February 29, 2016;

c.   $48,091.00 to BTS via check no. 5737, dated February 5, 2016, which cleared on March 1, 2016;

321.     The foregoing transfers identified in Paragraph 320 (the "BTS Transfers") constitute fraudulent transfers pursuant to the Illinois Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS 106/5(a)(1), because they were made with the actual intent to hinder, delay or defraud FleetOne with respect to the Outstanding iLoad Accounts owed pursuant to the FleetOne Advances.

322.     The BTS Transfers constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/5(a)(2), because iLoad did not receive reasonably equivalent value in exchange for the

transfers and iLoad intended to incur, or believed, or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

323.    The BTS Transfers constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/6(a), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad was insolvent at the time of the transfers or became insolvent as a result of the transfers.

324.    The BTS Transfers to BTS were fraudulent and should be avoided for the following reasons, including but not limited to:

    a.    The transfers were made with the actual intent to defraud FleetOne;

    b.    The transfers were made to an insider or assets controlled by insiders because of the interconnected relationships between Ilija, iLoad, ReLoad, Brian Delipara and BTS;

    c.    iLoad did not receive reasonably equivalent value in exchange for the transfers;

    d.    iLoad was functionally insolvent or became functionally insolvent shortly after the transfers were made;

    e.    The transfers occurred shortly after and during the period in which the substantial debt to FleetOne via the FleetOne Advances was incurred; and/or

    f.    Before certain of the transfers were made, iLoad had been sued or was threatened with being sued.

325.    Plaintiffs have not been provided with complete banking information from iLoad and, upon information and belief, additional fraudulent transfers from iLoad to BTS may exist which may be discovered during the pendency of this lawsuit.

13B703507

**WHEREFORE,** FleetOne respectfully requests that this Court enter judgment in its favor on Count XIII of the Complaint against Business Transportation Specialists and enter an order granting any or all of the following relief:

A.  Declaring that the BTS Transfers to BTS be deemed fraudulent and declared null and void to the full extent of the Outstanding iLoad Accounts;

B.  Avoiding the fraudulent BTS Transfers made by iLoad;

C.  Compelling BTS to immediately disgorge to FleetOne the sum of at least $144,888.00 or any greater amount proven at trial to constitute fraudulent transfers for purposes Sections 5 and 6 of the UFTA (740 ILCS 160/5, 160/6);

D.  Entering judgment in FleetOne's favor and against BTS in an amount equal to the BTS Transfers;

E.  Awarding such other relief as the circumstances may require pursuant to 740 ILCS 160/8(a), or that this court deems reasonable and just.

## COUNT XIV
### (Fraudulent Transfer: FleetOne v. iTruck Repair Shop)

Plaintiff FleetOne for its cause of action for fraudulent transfer against Defendant iTruck Repair Shop states and alleges as follows:

326.  Plaintiffs incorporate by reference Paragraphs 1 through 165 above as Paragraph 326 of this Count XIV as if fully set forth herein.

327.  Kinga advised WEX Bank that iTruck Repair Shop ("iTruck") is an affiliated entity of iLoad.

328.  As set forth herein, iLoad made transfers totaling $98,674.30 to and for the benefit of iTruck for which iLoad received no reasonably equivalent value in exchange and

which were intended to hinder, delay or and defraud iLoad's creditors, including, but not limited to, FleetOne.

329.     From on or about December 21, 2015 through April 25, 2016, iLoad transferred funds directly to iTruck totaling $83,500.00 as follows:

   a.  $5,000.00 to iTruck via check no. 5123, dated December 31, 2015 and which cleared on January 4, 2016;

   b.  $5,000.00 to iTruck via check no. 5269, dated January 8, 2016 and which cleared on January 12, 2016;

   c.  $5,500.00 to iTruck via check no. 5496, dated January 21, 2016 and which cleared on January 26, 2016;

   d.  $4,500.00 to iTruck via check no. 5571, dated January 26, 2016 and which cleared on January 29, 2016;

   e.  $7,000.00 to iTruck via check no. 5616, dated January 26, 2016 and which cleared on February 2, 2016;

   f.  $6,000.00 to iTruck via check no. 5738, dated February 5, 2016 and which cleared on February 8, 2016;

   g.  $6,000.00 to iTruck via check no. 5843, dated February 12, 2016 and which cleared on February 16, 2016;

   h.  $3,000.00 to iTruck via check no. 5976, dated February 16, 2016 and which cleared on February 22, 2016;

   i.  $4,500.00 to iTruck via check no. 6742, dated March 25, 2016 and which cleared on March 28, 2016;

13B703507

j.  $5,000.00 to iTruck via check no. 6812, dated March 30, 2016 and which cleared on April 1, 2016;

k.  $6,500.00 to iTruck via check no. 6872, dated April 4, 2016 and which cleared on April 6, 2016;

l.  $7,000.00 to iTruck via check no. 7180, dated April 15, 2016 and which cleared on April 19, 2016;

m.  $4,000.00 to iTruck via check no. 7221, dated April 19, 2016 and which cleared on April 21, 2016;

n.  $4,500.00 to iTruck via check no. 7308, dated April 21, 2016 and which cleared on April 25, 2016;

o.  $10,000.00 to iTruck via check no. 7363, dated April 25, 2016 and which cleared on April 27, 2016;

330.  From on or about March 2, 2016 through April 4, 2016, iLoad transferred a total of $13,150.00 to and for the benefit of iTruck via transfers to employees or agents of ReLoad as payment of iTruck's payroll, wages and/or salary obligations, as follows:

a.  $1,125.00 to Carlos Lopez, via check no. 6245, dated March 2, 2016 and which cleared on March 4, 2016;

b.  $1,080.00 to Juan Louis Rodriguez, via check no. 6247, dated March 2, 2016 and which cleared on March 7, 2016;

c.  $980.00 to Memos Body Repair, via check no. 6248, dated March 2, 2016 and which cleared on March 7, 2016;

d.  $675.00 to Nelson Jusino, via check no. 6250, dated March 2, 2016 and which cleared on March 7, 2016;

13B703507

e. $1,000.00 to Zlatko Halilovic, via check no. 6251, dated March 2, 2016 and which cleared on March 7, 2016;

f. $1,000.00 to Zlatko Halilovic, via check no. 6252, dated March 3, 2016 and which cleared on March 7, 2016;

g. $480.00 to Miguel Jusino, via check no. 6253, dated March 3, 2016 and which cleared on March 7, 2016;

h. $1,000.00 to Zlatko Halilovic, via check no. 6257, dated March 4, 2016 and which cleared on March 8, 2016;

i. $675.00 to Nelson Jusino, via check no. 6258, dated March 4, 2016 and which cleared on March 7, 2016;

j. $770.00 to Miguel Jusino, via check no. 6259, dated March 4, 2016 and which cleared on March 7, 2016;

k. $980.00 to Memos Body Repair, via check no. 6260, dated March 4, 2016 and which cleared on March 7, 2016;

l. $1,200.00 to Juan Louis Rodriguez, via check no. 6261, dated March 4, 2016 and which cleared on March 7, 2016;

m. $750.00 to Daniel Zacarias, via check no. 6262, dated March 2, 2016 and which cleared on March 8, 2016;

n. $675.00 to Daniel Zacarias, via check no. 6267, dated March 2, 2016 and which cleared on March 8, 2016;

o. $760.68 to Miguel Jusino, via check no. 6860, dated April 4, 2016 and which cleared on April 7, 2016;

69

331.    From on or about January 26, 2016 through April 5, 2016, iLoad transferred a total of $2,023.62 to and for the benefit of iTruck via transfers to vendors of iTruck for payment of iTruck Repair Shop's outstanding obligations as follows:

a.    $1,562.10 to ML Sullivan Insurance Agency via check no. 5562, dated January 26, 2016 and which cleared on February 5, 2016;

b.    $62.47 to Memos Body Repair, via check no. 5841, dated February 12, 2016 and which cleared on February 22, 2016;

c.    $399.05 to Miguel Jusino, via check no. 6980, dated April 5, 2016 and which cleared on April 7, 2016;

332.    The foregoing transfers identified in Paragraphs 329, 330 and 331 (the "iTruck Transfers") constitute fraudulent transfers pursuant to the Illinois Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS 106/5(a)(1), because they were made with the actual intent to hinder, delay or defraud FleetOne with respect to the Outstanding iLoad Accounts owed pursuant to the FleetOne Advances.

333.    The iTruck Transfers constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/5(a)(2), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad intended to incur, or believed, or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

334.    The iTruck Transfers constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/6(a), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad was insolvent at the time of the transfers or became insolvent as a result of the transfers.

13B703507

335. The iTruck Transfers to and for the benefit of iTruck were fraudulent and should be avoided for the following reasons, including but not limited to:

   a. The transfers were made with the actual intent to defraud FleetOne;

   b. The transfers were made to an insider or assets controlled by insiders due to the affiliation between iLoad and iTruck Repair Shop;

   c. iLoad did not receive reasonably equivalent value in exchange for the transfers;

   d. iLoad was functionally insolvent or became functionally insolvent shortly after the transfers were made;

   e. The transfers occurred shortly after and during the period in which the substantial debt to FleetOne via the FleetOne Advances was incurred; and/or

   f. Before certain of the transfers were made, iLoad had been sued or was threatened with being sued.

336. Plaintiffs have not been provided with complete banking information from iLoad and, upon information and belief, additional fraudulent transfers from iLoad to iTruck may exist which may be discovered during the pendency of this lawsuit.

**WHEREFORE,** FleetOne respectfully requests that this Court enter judgment in its favor on Count XIV of the Complaint against iTruck Repair Shop and enter an order granting any or all of the following relief:

A. Declaring that the iTruck Transfers be deemed fraudulent and declared null and void to the full extent of the Outstanding iLoad Accounts;

B. Avoiding the fraudulent iTruck Transfers made by iLoad;

13B703507

C.      Compelling iTruck to immediately disgorge to FleetOne the sum of at least $98,674.30 or any greater amount proven at trial to constitute fraudulent transfers for purposes Sections 5 and 6 of the UFTA (740 ILCS 160/5, 160/6);

D.      Entering judgment in FleetOne's favor and against iTruck in an amount equal to the iTruck Transfers;

E.      Awarding such other relief as the circumstances may require pursuant to 740 ILCS 160/8(a), or that this court deems reasonable and just.

<u>**COUNT XV**</u>
**(Fraudulent Transfer: FleetOne v. Energy Line, Inc.)**

Plaintiff FleetOne for its cause of action for fraudulent transfer against Energy Line, Inc., states and alleges as follows:

337.    Plaintiffs incorporate by reference Paragraphs 1 through 165 above as Paragraph 337 of this Count XV as if fully set forth herein.

338.    Upon information and belief, Roza Josifova is the president and owner of Energy Line, Inc. ("<u>Energy Line</u>"). Upon information and belief, Roza Josifova is affiliated with and/or employed by iLoad.

339.    As set forth herein, iLoad made transfers totaling $221,706.50 to Energy Line for which iLoad received no reasonably equivalent value in exchange and which were intended to hinder, delay or and defraud iLoad's creditors, including, but not limited to, FleetOne.

340.    From on or about January 11, 2016 through March 3, 2016, iLoad transferred funds totaling $221,706.50 to Energy Line as follows:

    a.  $3,500.00 to Energy Line via check no. 5318, dated January 11, 2016, which cleared on January 13, 2016;

72

b. $4,000.00 to Energy Line via check no. 5393, dated January 15, 2016, which cleared on January 20, 2016;

c. $1,500.00 to Energy Line via check no. 5526, dated January 24, 2016, which cleared on January 27, 2016;

d. $8,000.00 to Energy Line via check no. 5837, dated February 11, 2016, which cleared on February 12, 2016;

e. $9,500.00 to Energy Line via check no. 5972, dated February 16, 2016, which cleared on February 19, 2016;

f. $19,000.00 to Energy Line via check no. 6124, dated February 24, 2016, which cleared on February 26, 2016;

g. $10,248.50 to Energy Line via check no. 6875, dated April 4, 2016, which cleared on April 6, 2016;

h. $11,000.00 to Energy Line via check no. 6977, dated April 7, 2016, which cleared on April 11, 2016;

i. $12,000.00 to Energy Line via check no. 7035, dated April 12, 2016, which cleared on April 14, 2016;

j. $7,000.00 to Energy Line via check no. 7145, dated April 13, 2016, which cleared on April 19, 2016;

k. $6,000.00 to Energy Line via check no. 7224, dated April 20, 2016, which cleared on April 22, 2016;

l. $5,500.00 to Energy Line via check no. 7358, dated April 25, 2016, which cleared on April 27, 2016;

13B703507

m.  $19,200.00 to Energy Line via check no. 6506, dated March 15, 2016, which cleared on March 17, 2016;

n.  $6,000.00 to Energy Line via check no. 6521, dated March 16, 2016, which cleared on March 18, 2016;

o.  $24,746.00 to Energy Line via check no. 6593, dated March 22, 2016, which cleared on March 24, 2016;

p.  $23,512.00 to Energy Line via check no. 6647, dated March 23, 2016, which cleared on March 25, 2016;

q.  $33,000.00 to Energy Line via check no. 6669, dated March 25, 2016, which cleared on March 29, 2016;

r.  $11,000.00 to Energy Line via check no. 6775, dated March 29, 2016, which cleared on March 31, 2016;

s.  $7,000.00 to Energy Line via check no. 6244 dated March 3, 2016, which cleared on March 4, 2016.

341.    The foregoing transfers identified in Paragraph 340 (the "Energy Line Transfers") constitute fraudulent transfers pursuant to the Illinois Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS 106/5(a)(1), because they were made with the actual intent to hinder, delay or defraud FleetOne with respect to the Outstanding iLoad Accounts owed pursuant to the FleetOne Advances.

342.    The Energy Line Transfers constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/5(a)(2), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad intended to incur, or believed, or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

74

343. The Energy Line Transfers constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/6(a), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad was insolvent at the time of the transfers or became insolvent as a result of the transfers.

344. The Energy Line Transfers to Energy Line were fraudulent and should be avoided for the following reasons, including but not limited to:

    a. The transfers were made with the actual intent to defraud FleetOne;

    b. The transfers were made to an insider or assets controlled by insiders because of the interconnected relationship between iLoad and Energy Line via Roza Josifova, iLoad's employee and Energy Line's respectively;

    c. iLoad did not receive reasonably equivalent value in exchange for the transfers;

    d. iLoad was functionally insolvent or became functionally insolvent shortly after the transfers were made;

    e. The transfers occurred shortly after and during the period in which the substantial debt to FleetOne via the FleetOne Advances was incurred; and/or

    f. Before certain of the transfers were made, iLoad had been sued or was threatened with being sued.

345. Plaintiffs have not been provided with complete banking information from iLoad and, upon information and belief, additional fraudulent transfers from iLoad to Energy Line may exist which may be discovered during the pendency of this lawsuit.

**WHEREFORE,** FleetOne respectfully requests that this Court enter judgment in its favor on Count XV of the Complaint against Energy Line, Inc., and enter an order granting any or all of the following relief:

13B703507

A.      Declaring that the Energy Line Transfers be deemed fraudulent and declared null and void to the full extent of the Outstanding iLoad Accounts;

B.      Avoiding the fraudulent Energy Line Transfers made by iLoad;

C.      Compelling Energy Line to immediately disgorge to FleetOne the sum of at least $221,706.50 or any greater amount proven at trial to constitute fraudulent transfers for purposes Sections 5 and 6 of the UFTA (740 ILCS 160/5, 160/6);

D.      Entering judgment in FleetOne's favor and against Energy Line in an amount equal to the Energy Line Transfers;

E.      Awarding such other relief as the circumstances may require pursuant to 740 ILCS 160/8(a), or that this court deems reasonable and just.

## COUNT XVI
### (Fraudulent Transfer: FleetOne v. IMex Logistics)

Plaintiff FleetOne for its cause of action for fraudulent transfer against Defendant IMex Logistics, Inc., states and alleges as follows:

346.    Plaintiff incorporate by reference Paragraphs 1 through 165 above as Paragraph 346 of this Count XVI as if fully set forth herein.

347.    Upon information and belief, Juana C. Davila is the president and owner of IMex Logistics, Inc. ("IMex"). Upon information and belief, Juana C. Davila is affiliated with and/or employed by iLoad.

348.    As set forth herein, iLoad made transfers totaling $39,300.00 to and for the benefit of IMex for which iLoad received no reasonably equivalent value in exchange and which were intended to hinder, delay or and defraud iLoad's creditors, including, but not limited to, FleetOne.

349.    From January 18, 2016 through March 3, 2016, iLoad transferred funds totaling $38,500.00 directly to IMex as follows:

        a.    $1,300.00 to IMex via check no. 5439, dated January 18, 2016, which cleared on January 21, 2016;

        b.    $200.00 to IMex via check no. 5567, dated January 26, 2016, which cleared on January 27, 2016;

        c.    $2,000.00 to IMex via check no. 5569, dated January 26, 2016, which cleared on January 28, 2016;

        d.    $1,000.00 to IMex via check no. 5730, dated February 5, 2016, which cleared on February 8, 2016;

        e.    $1,500.00 to IMex via check no. 5927, dated February 11, 2016, which cleared on February 17, 2016;

        f.    $30,000.00 to IMex via check no. 6527, dated March 17, 2016, which cleared on March 21, 2016;

        g.    $1,500.00 to IMex via check no. 6320, dated March 7, 2016, which cleared on March 10, 2016;

        h.    $1,000.00 to IMex via check no. 6239, dated March 3, 2016, which cleared on March 4, 2016.

350.    From on or about December 29, 2015 through January 13, 2016, iLoad transferred a total of $800.00 indirectly to IMex via transfers to a vendor of IMex for IMex's outstanding obligations as follows:

        a.    $400.00 to Med Stop via check no. 5108, dated December 29, 2015 and which cleared on January 16, 2016;

13B703507

      b.  $400.00 to Med Stop via check no. 5347, dated January 13, 2016 and which cleared on January 19, 2016;

351.    The foregoing transfers identified in Paragraphs 349 and 350 (the "IMex Transfers") constitute fraudulent transfers pursuant to the Illinois Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS 106/5(a)(1), because they were made with the actual intent to hinder, delay or defraud FleetOne with respect to the Outstanding iLoad Accounts owed pursuant to the FleetOne Advances.

352.    The IMex Transfers constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/5(a)(2), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad intended to incur, or believed, or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

353.    The IMex Transfers constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/6(a), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad was insolvent at the time of the transfers or became insolvent as a result of the transfers.

354.    The IMex Transfers to IMex were fraudulent and should be avoided for the following reasons, including but not limited to:

      a.  The transfers were made with the actual intent to defraud FleetOne;

      b.  The transfers were made to an insider or assets controlled by insiders because of the interconnected relationship between iLoad and Energy Line via Junana C. Davila, iLoad's employee and Energy Line's president;

      c.  iLoad did not receive reasonably equivalent value in exchange for the transfers;

78

d.  iLoad was functionally insolvent or became functionally insolvent shortly after the transfers were made;

e.  The transfers occurred shortly after and during the period in which the substantial debt to FleetOne via the FleetOne Advances was incurred; and/or

f.  Before certain of the transfers were made, iLoad had been sued or was threatened with being sued.

355.  Plaintiffs have not been provided with complete banking information from iLoad and, upon information and belief, additional fraudulent transfers from iLoad to IMex may exist which may be discovered during the pendency of this lawsuit.

**WHEREFORE,** FleetOne respectfully requests that this Court enter judgment in its favor on Count XVI of the Complaint against IMex Logistics and enter an order granting any or all of the following relief:

A.  Declaring that the IMex Transfers be deemed fraudulent and declared null and void to the full extent of the Outstanding iLoad Accounts;

B.  Avoiding the fraudulent IMex Transfers made by iLoad;

C.  Compelling IMex to immediately disgorge to FleetOne the sum of at least $39,300.00 or any greater amount proven at trial to constitute fraudulent transfers for purposes Sections 5 and 6 of the UFTA (740 ILCS 160/5, 160/6);

D.  Entering judgment in FleetOne's favor and against IMex in an amount equal to the IMex Transfers;

E.  Awarding such other relief as the circumstances may require pursuant to 740 ILCS 160/8(a), or that this court deems reasonable and just.

13B703507

## COUNT XVII
### (Fraudulent Transfer: FleetOne v. Lollipop)

Plaintiff FleetOne for its cause of action for fraudulent transfer against Defendant Lollipop, states and alleges as follows:

356.    Plaintiff incorporate by reference Paragraphs 1 through 165 above as Paragraph 356 of this Count XVII as if fully set forth herein.

357.    Kinga and Ilija are two of the three owners and managers of Lollipop, which is the owner and operator of a nightclub and lounge located in Schiller Park, Illinois.

358.    As set forth herein, iLoad made transfers totaling $68,800.00 to and for the benefit of Lollipop for which iLoad received no reasonably equivalent value in exchange and which were intended to hinder, delay or and defraud iLoad's creditors, including, but not limited to, FleetOne.

359.    From June 28, 2016 through August 23, 2016, iLoad transferred funds totaling $38,000.00 to Lollipop as follows:

    a.   $7,000.00 to Lollipop via electronic transfer to Lollipop on June 28, 2016;

    b.   $5,000.00 to Lollipop via electronic transfer to Lollipop on June 30, 2016;

    c.   $7,500.00 to Lollipop via electronic transfer to Lollipop on July 12, 2016;

    d.   $10,500.00 to Lollipop via electronic transfer to Lollipop on July 14, 2016;

    e.   $28,000.00 to Lollipop via electronic transfer to Lollipop on July 18, 2016;

    f.   $3,300.00 to Lollipop via electronic transfer to Lollipop on August 23, 2016.

360.    On March 9, 2016, iLoad transferred $7,500.00 to and for the benefit of Lollipop via check no. 6385, payable to Nick Dadevski, which cleared on March 15, 2016, as payment of Lollipop's rent for its premises.

13B703507

361.     The foregoing transfers identified in Paragraphs 359 and 360 (the "Lollipop Transfers") constitute fraudulent transfers pursuant to the Illinois Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS 106/5(a)(1), because they were made with the actual intent to hinder, delay or defraud FleetOne with respect to the Outstanding iLoad Accounts owed pursuant to the FleetOne Advances.

362.     The Lollipop Transfers constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/5(a)(2), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad intended to incur, or believed, or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

363.     The Lollipop Transfers constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/6(a), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad was insolvent at the time of the transfers or became insolvent as a result of the transfers.

364.     The Lollipop Transfers were fraudulent and should be avoided for the following reasons, including but not limited to:

a.   The transfers were made with the actual intent to defraud FleetOne;

b.   The transfers were made to an insider or assets controlled by insiders because of Kinga and Ilija are two of the three owners and managers of Lollipop;

c.   iLoad did not receive reasonably equivalent value in exchange for the transfers;

d.   iLoad was functionally insolvent or became functionally insolvent shortly after the transfers were made;

e.   The transfers occurred shortly after and during the period in which the substantial debt to FleetOne via the FleetOne Advances was incurred; and/or

f.   Before certain of the transfers were made, iLoad had been sued or was threatened with being sued.

365.   Plaintiffs have not been provided with complete banking information from iLoad and, upon information and belief, additional fraudulent transfers from iLoad to Lollipop may exist which may be discovered during the pendency of this lawsuit.

**WHEREFORE,** FleetOne respectfully requests that this Court enter judgment in its favor on Count XVII of the Complaint against Lollipop and enter an order granting any or all of the following relief:

A.   Declaring that the Lollipop Transfers be deemed fraudulent and declared null and void to the full extent of the Outstanding iLoad Accounts;

B.   Avoiding the fraudulent Lollipop Transfers made by iLoad;

C.   Compelling Lollipop to immediately disgorge to FleetOne the sum of at least $68,800.00 or any greater amount proven at trial to constitute fraudulent transfers for purposes Sections 5 and 6 of the UFTA (740 ILCS 160/5, 160/6);

D.   Entering judgment in FleetOne's favor and against Lollipop in an amount equal to the Lollipop Transfers;

E.   Awarding such other relief as the circumstances may require pursuant to 740 ILCS 160/8(a), or that this court deems reasonable and just.

## COUNT XVIII
### (Fraudulent Transfer: FleetOne v. B Line Transport Inc.)

Plaintiff FleetOne for its cause of action for fraudulent transfer against Defendant B Line Transport Inc., states and alleges as follows:

366.   Plaintiff incorporate by reference Paragraphs 1 through 165 above as Paragraph 366 of this Count XVIII as if fully set forth herein.

13B703507

367.     Upon information and belief, Slobodanka Ristik, the registered agent of B Line Transport Inc. ("B Line") is the relative of Ilija.

368.     As set forth herein, iLoad made transfers totaling $10,435.18 to and for the benefit of B Line for which iLoad received no reasonably equivalent value in exchange and which were intended to hinder, delay or and defraud iLoad's creditors, including, but not limited to, FleetOne.

369.     From on or about January 11, 2016 through June 10, 2016, iLoad transferred a total of $10,435.18 to B Line via transfers to vendors of B Line for payment of B Line's outstanding obligations as follows:

   a.  $2,662.18 to Progressive via check no. 5335, dated January 11, 2016 and which cleared on January 21, 2016;

   b.  $400.00 to Med Stop via check no. 5348, dated January 13, 2016 and which cleared on January 19, 2016;

   c.  $500.00 to Med Stop via check no. 5490, dated January 21, 2016 and which cleared on January 21, 2016;

   d.  $500.00 to Med Stop via check no. 5724, dated February 3, 2016 and which cleared on February 8, 2016;

   e.  $500.00 to Med Stop via check no. 5971, dated February 16, 2016 and which cleared on February 22, 2016;

   f.  $5,873.00 to ML Sullivan Insurance via ACH payment on June 10, 2016;

370.     The foregoing transfers identified in Paragraph 369 (the "B Line Transfers"), constitute fraudulent transfers pursuant to the Illinois Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS 106/5(a)(1), because they were made with the actual intent to hinder, delay

or defraud FleetOne with respect to the Outstanding iLoad Accounts owed pursuant to the FleetOne Advances.

371.    The B Line Transfers constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/5(a)(2), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad intended to incur, or believed, or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

372.    The B Line Transfers constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/6(a), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad was insolvent at the time of the transfers or became insolvent as a result of the transfers.

373.    The B Line Transfers for the benefit of B Line were fraudulent and should be avoided for the following reasons, including but not limited to:

a.    The transfers were made with the actual intent to defraud FleetOne;

b.    The transfers were made to an insider or assets controlled by insiders because of relationship between Ilija and B Line's registered agent;

c.    iLoad did not receive reasonably equivalent value in exchange for the transfers;

d.    iLoad was functionally insolvent or became functionally insolvent shortly after the transfers were made;

e.    The transfers occurred shortly after and during the period in which the substantial debt to FleetOne via the FleetOne Advances was incurred; and/or

f.    Before certain of the transfers were made, iLoad had been sued or was threatened with being sued.

13B703507

374.     Plaintiffs have not been provided with complete banking information from iLoad and, upon information and belief, additional fraudulent transfers from iLoad to B Line may exist which may be discovered during the pendency of this lawsuit.

**WHEREFORE,** FleetOne respectfully requests that this Court enter judgment in its favor on Count XVIII of the Complaint against B Line Transport, Inc., and enter an order granting any or all of the following relief:

A.     Declaring that the B Line Transfers be deemed fraudulent and declared null and void to the full extent of the Outstanding iLoad Accounts;

B.     Avoiding the fraudulent B Line Transfers made by iLoad;

C.     Compelling B Line to immediately disgorge to FleetOne the sum of at least $10,435.18 or any greater amount proven at trial to constitute fraudulent transfers for purposes Sections 5 and 6 of the UFTA (740 ILCS 160/5, 160/6);

D.     Entering judgment in FleetOne's favor and against B Line in an amount equal to the B Line Transfers;

E.     Awarding such other relief as the circumstances may require pursuant to 740 ILCS 160/8(a), or that this court deems reasonable and just.

## COUNT XIX
### (Fraudulent Transfer: FleetOne v. PAL 401 LLC)

Plaintiff FleetOne for its cause of action for fraudulent transfer against PAL 401 LLC, states and alleges as follows:

375.     Plaintiffs incorporate by reference Paragraphs 1 through 165 above as Paragraph 375 of this Count XIX as if fully set forth herein.

376.     As set forth herein, iLoad made transfers totaling $78,885.13 to PAL 401 LLC ("PAL") for rent and parking spaces for which, upon information and belief, iLoad received no

reasonably equivalent value in exchange and which were intended to hinder, delay or and defraud iLoad's creditors, including, but not limited to, FleetOne.

377.    Upon information and belief, iLoad leased no property or parking spaces from PAL, for which it owed rent and parking payments and iLoad was instead paying the rent and parking payments of one or any of its various affiliated entities.

378.    From on or about January 1, 2016 through April 1, 2016, iLoad transferred funds totaling $78,885.00 to PAL as follows:

a.  $19,572.35 to PAL via check no. 5117, dated January 1, 2016, which cleared on January 7, 2016;

b.  $16,184.00 to PAL via check no. 5668, dated February 1, 2016, which cleared on February 5, 2016;

c.  $3,500.00 to PAL via check no. 5669, dated February 1, 2016, which cleared on February 5, 2016;

d.  $260.78 to PAL via check no. 5670, dated February 1, 2016, which cleared on February 4, 2016;

e.  $19,684.00 to PAL via check no. 6378, dated March 9, 2016, which cleared on March 15, 2016;

f.  $19,684.00 to PAL via check no. 6823, dated April 1, 2016, which cleared on April 5, 2016;

379.    The foregoing transfers identified in Paragraph 378 (the "PAL Transfers"), constitute fraudulent transfers pursuant to the Illinois Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS 106/5(a)(1), because they were made with the actual intent to hinder, delay

or defraud FleetOne with respect to the Outstanding iLoad Accounts owed pursuant to the FleetOne Advances.

380.     The PAL Transfers constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/5(a)(2), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad intended to incur, or believed, or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

381.     The PAL Transfers constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/6(a), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad was insolvent at the time of the transfers or became insolvent as a result of the transfers.

382.     The PAL Transfers were fraudulent and should be avoided for the following reasons, including but not limited to:

    a.   The transfers were made with the actual intent to defraud FleetOne;

    b.   iLoad did not receive reasonably equivalent value in exchange for the transfers;

    c.   iLoad was functionally insolvent or became functionally insolvent shortly after the transfers were made;

    d.   The transfers occurred shortly after and during the period in which the substantial debt to FleetOne via the FleetOne Advances was incurred; and/or

    e.   Before certain of the transfers were made, iLoad had been sued or was threatened with being sued.

383.     Plaintiffs have not been provided with complete banking information from iLoad and, upon information and belief, additional fraudulent transfers from iLoad to PAL may exist which may be discovered during the pendency of this lawsuit.

13B703507

**WHEREFORE,** FleetOne respectfully requests that this Court enter judgment in its favor on Count XIX of the Complaint against PAL 401 LLC and enter an order granting any or all of the following relief:

A.      Declaring that the PAL Transfers be deemed fraudulent and declared null and void to the full extent of the Outstanding iLoad Accounts;

B.      Avoiding the fraudulent PAL Transfers made by iLoad;

C.      Compelling PAL to immediately disgorge to FleetOne the sum of at least $78,885.13 or any greater amount proven at trial to constitute fraudulent transfers for purposes Sections 5 and 6 of the UFTA (740 ILCS 160/5, 160/6);

D.      Entering judgment in FleetOne's favor and against PAL in an amount equal to the PAL Transfers;

E.      Awarding such other relief as the circumstances may require pursuant to 740 ILCS 160/8(a), or that this court deems reasonable and just.

Respectfully submitted,

WEX BANK and FLEETONE FACTORING, LLC

By: /s/ Diana H. Psarras
     One of Their Attorneys

Laurie A. Martin Montplaisir (ARDC No. 6237622)
Diana H. Psarras (ARDC No. 6283780)
William A. Castle, Jr. (ARDC No. 6288893)
ROBBINS, SALOMON & PATT, LTD.
Attorneys for Plaintiffs
180 North LaSalle Street, Suite 3300
Chicago, Illinois 60601
(312) 782-9000
Fax (312) 782-6690
LMartinMontplaisir@rsplaw.com
DPsarras@rsplaw.com
WCastleJr@rsplaw.com

13B703507