**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WEX BANK, FLEETONE FACTORING, LLC, a Tennessee limited liability company, and IRA BODENSTEIN, not individually but solely in his capacity as the CHAPTER 7 TRUSTEE OF iLOAD, INC., | ) ) ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 17 cv 3392 |
| | ) | |
| iLOAD, INC., an Illinois corporation; RIVOJ TRANS., INC., an Illinois corporation; EWA POLITANSKA, an individual; KINGA POLITANSKA a/k/a KINGA RISTIK a/k/a KINGA SAVIC, an individual, ILIJA RISTIK a/k/a IKO RISTIK an individual; LOLLIPOP LLC, an Illinois limited liability company; RELOAD INC., a dissolved Illinois corporation; RELOAD LLC, an Illinois limited liability company; PRESTON CARTER; ADAM WHITE; JAMES ELSEA; ROZA JOSIFOVA; ENBRAVIA, INC., an Illinois corporation; BUSINESS TRANSPORTATION SPECIALISTS, LLC, a Wisconsin limited liability company; ITRUCK REPAIR SHOP INC., a dissolved Illinois corporation; ENERGY LINE, INC., an Illinois corporation; IMEX LOGISTICS, INC., an Illinois corporation; B LINE TRANSPORT INC., an Illinois corporation; PAL 401 LLC, an Illinois limited liability company, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Hon. Judge John J. Tharp, Jr.<br><br>Hon. Magistrate Judge Susan E. Cox<br><br>**PLAINTIFF REQUESTS TRIAL BY JURY** |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

Plaintiffs WEX Bank, FleetOne Factoring, LLC, a Tennessee limited liability company, and IRA BODENSTEIN, not individually but solely in his capacity as the CHAPTER 7 TRUSTEE OF ILOAD, INC., by their attorneys, Richard H. Fimoff, Diana H. Psarras and William A. Castle, Jr., of Robbins, Salomon & Patt, Ltd., for their Second Amended Complaint against defendants Ilija Ristik a/k/a Iko Ristik, Enbravia, Inc., an Illinois corporation, and

1

3102594

Business Transportation Specialists, LLC, a Wisconsin limited liability company, states as follows:

## Introduction

1.     WEX Bank and its affiliated entity FleetOne Factoring, LLC, bring this action in order to recoup the over $2,000,000.00 in damages they have collectively suffered due to a fraud scheme by the Defendants.

2.     All the Defendants are associated with iLoad, Inc., an Illinois corporation, which, with its affiliated company Rivoj Trans, Inc., purportedly provided transportation carrier services to XPO Logistics, Inc.

3.     iLoad, Inc., and Rivoj Trans, Inc., each entered into a factoring relationship with one of the Plaintiffs, and each of Ewa Politanska, Kinga Politanska a/k/a Kinga Ristik a/k/a Kinga Savic and Ilija Ristik a/k/a Iko Ristik submitted false documents to Plaintiffs in a scheme to fraudulently obtain funds which were misappropriated and transferred to business entities controlled by or affiliated with Ilija Ristik a/k/a Iko Ristik and Kinga Politanska a/k/a Kinga Ristik a/k/a Kinga Savic with the purpose of improperly enriching themselves.

4.     As set forth in the facts of this Complaint, the Defendants never intended for the Plaintiffs to be repaid their advances to iLoad, Inc., and Rivoj Trans, Inc.

5.     In this Complaint, each of WEX Bank and FleetOne Factoring, LLC, seeks repayment of its advances from the individuals and entities who directly or indirectly received the fraudulently obtained proceeds of the WEX Bank and FleetOne Factoring, LLC, advances and/or participated in the scheme to defraud WEX Bank and FleetOne Factoring, LLC, to advance funds.

3102594

**Parties, Jurisdiction And Venue**

6.      Plaintiff WEX Bank is an industrial banking association with its main office and principal place of business at 1104 Country Hills Drive, Ogden, Utah.

7.      Plaintiff FleetOne Factoring, LLC ("FleetOne"), is a Tennessee limited liability company, with its headquarters and principal place of business located in Nashville, Davidson County, Tennessee. As a limited liability company, FleetOne is a citizen of the states of each of its members. The sole member of FleetOne is Transplatinum Service LLC, a Tennessee limited liability company with its headquarters and principal place of business located in Nashville, Davidson County, Tennessee. The sole member of Transplatinum Service LLC is FleetOne Holdings, LLC, a Delaware limited liability company with its headquarters and principal place of business located in South Portland, Maine. The sole member of FleetOne Holdings, LLC is Wex, Inc., a Delaware corporation with its headquarters and principal place of business in South Portland, Maine.

8.      iLoad, Inc. ("iLoad") is a corporation incorporated in the State of Illinois with its principal place of business in Des Plaines, Illinois. On May 23, 2017, iLoad, Inc., filed its voluntary petition for relief [DE 1] under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101-1532 (as amended, the "Bankruptcy Code") with the United States Bankruptcy Court for the Northern District of Illinois, as case no. 17-16011 (the "iLoad Bankruptcy Case"). Plaintiffs seek no relief against iLoad herein as a result of the iLoad Bankruptcy Case.

9.      On July 19, 2017, the iLoad Bankruptcy Case was converted to a case under Chapter 7 of the Bankruptcy Code. (Ex. 1, at No. 99) and Richard Mason was appointed interim trustee. Mr. Mason resigned (Ex. 1 at Nos. 100, 128) and Ira Bodenstein was appointed successor

3102594

trustee and continues to act as trustee (hereinafter "Trustee"). Trustee is an individual domiciled in the State of Illinois.

10.    Trustee, was substituted as the party Plaintiff on Counts VIII through XIX herein on October 26, 2017.

11.    Rivoj Trans, Inc. ("Rivoj"), is a corporation incorporated in the State of Illinois, with its principal place of business in Des Plaines, Illinois.

12.    On information and belief, Ewa Politanksa ("Ewa") is an individual domiciled in the State of Illinois.

13.    On information and belief, Kinga Politanska a/k/a Kinga Ristik a/k/a Kinga Savic ("Kinga") is an individual domiciled in the State of Illinois. On January 23, 2018, Kinga filed her voluntary petition for relief under Chapter 11 of Title 11 of the Bankruptcy Code, 11 U.S.C. § 101-1532,with the United States Bankruptcy Court for the Northern District of Illinois, as case no. 18-01938 (the "Kinga Bankruptcy Case") [DE 1]. Plaintiffs seek no relief against Kinga herein as a result of the Kinga Bankruptcy Case.

14.    Kinga informed Plaintiffs, during a telephone conference on or about February 16, 2017, that Ewa is Kinga's mother.

15.    On information and belief, Ilija Ristik a/k/a Iko Ristik ("Ilija") is an individual domiciled in the State of Illinois and is a foreign Alien.

16.    Lollipop, LLC ("Lollipop") is an Illinois limited liability company. As a limited liability company, Lollipop is a citizen of the states of each of its members. Kinga and Ilija are both managers of Lollipop and, upon information and belief, are also members of Lollipop. There may be other members of Lollipop whose identities are currently unknown to Plaintiffs.

4

17. ReLoad Inc., is a corporation that was incorporated in the State of Illinois with its principal offices located in Chicago, Illinois and which was involuntarily dissolved on or about August 26, 2016.

18. ReLoad LLC, is an Illinois limited liability company. As a limited liability company, ReLoad LLC is a citizen of the states of each of its members. Ilija is a manager of ReLoad LLC, and on information and belief, is also a member of ReLoad LLC. There may be other members of ReLoad LLC whose identities are currently unknown to Plaintiffs.

19. On information and belief, Preston Carter is an individual domiciled in the State of Illinois.

20. On information and belief, Adam White is an individual domiciled in the State of Illinois.

21. On information and belief, James Elsea is an individual domiciled in the State of Illinois.

22. On information and belief, Roza Josifova is an individual domiciled in the State of Illinois.

23. Enbravia, Inc., is a corporation incorporated in the State of Illinois, which is not in good standing, with its principal offices located in Oswego, Illinois.

24. Business Transportation Specialists, LLC ("BTS"), is a Wisconsin limited liability company. As a limited liability company, BTS is a citizen of the states of each of its members. Upon information and belief, Brian Delipara, an individual, is the manager and a member of BTS. Upon information and belief, Brian Delipara is domiciled in the State of Wisconsin. BTS may have other members whose identities are currently unknown to Plaintiff.

3102594

25.     iTruck Repair Shop Inc., is a corporation that was incorporated in the State of Illinois with its principal offices located in East Dundee, Illinois and which was voluntarily dissolved on or about November 4, 2016.

26.     Energy Line, Inc., is a corporation incorporated in the State of Illinois with its principal offices located in Melrose Park, Illinois.

27.     iMex Logistics, Inc., n/k/a A Brokers Inc., is a corporation incorporated in the State of Illinois with its principal offices located in Chicago, Illinois.

28.     B Line Transport Inc., is a corporation incorporated in the State of Illinois with its principal offices located in Park Ridge and/or Schiller Park, Illinois.

29.     PAL 401 LLC, is an Illinois limited liability company. As a limited liability company, PAL 401 LLC is a citizen of the states of each of its members. The identity of the member(s) of PAL 401 LLC is currently unknown to Plaintiff.

30.     This Court has original federal question subject matter jurisdiction under 28 U.S.C. §1331 because this action arises under RICO, 18 U.S.C. §1962. This Court has supplemental jurisdiction over all other claims raised in this action under 28 U.S.C. §1367(a) because they are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy.

31.     This Court may also have jurisdiction over this action based upon diversity of the parties pursuant to 28 U.S.C. §1332(a)(1) because, upon information and belief, each Defendant is a "citizen" of different states than Trustee, WEX Bank or FleetOne, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3102594

32. Venue in the Northern District of Illinois is proper under 28 U.S.C. §1391(a) in that a substantial part of the events giving rise to Trustee's, WEX Bank's and FleetOne's claims occurred in this District.

## Allegations Common to All Counts

### A. *Factoring*

33. The ultimate parent company of each of WEX Bank and FleetOne is WEX, Inc., a publically traded company offering corporate payment financing solutions in several industries, including the transportation industry.

34. WEX Bank and FleetOne are in the transportation factoring business, which business consists of the purchase of commercial accounts receivable ("Accounts") from trucking and other businesses in the transportation industry with whom a factor has formed a contractual relationship.

35. "Accounts" as used herein and in the factoring industry has the same meaning as identified by the State of Illinois Uniform Commercial Code, 810 ILCS 5/9-101 *et. seq.,* (hereinafter "UCC"), which is:

> a right to payment of a monetary obligation, whether or not earned by performance, (i) for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of, (ii) for services rendered or to be rendered, (iii) for a policy of insurance issued or to be issued, (iv) for a secondary obligation incurred or to be incurred, (v) for energy provided or to be provided, (vi) for the use or hire of a vessel under a charter or other contract, (vii) arising out of the use of a credit or charge card or information contained on or for use with the card, or (viii) as winnings in a lottery or other game of chance operated or sponsored by a State, governmental unit of a State, or person licensed or authorized to operate the game by a State or governmental unit of a State. 810 ILCS 5/9-102(a)(2).

36. WEX Bank provides funding for the purchase of the Accounts.

7

3102594

37. FleetOne provides the administration and operations support in connection with WEX Bank's purchase of the Accounts.

38. Prior to WEX, Inc. acquiring FleetOne, FleetOne provided funding to transportation factoring clients. After FleetOne's acquisition by WEX, Inc., the factoring contracts were entered into by and between WEX Bank and the transportation factoring client.

39. Within the factoring industry, the entity that purchases Accounts is known as the "Factor" or "Purchaser" of the accounts, in this case, each of the Plaintiffs.

40. The entity from whom the Accounts are purchased is known as the "Factoring Client" of the Accounts, in this case, each of iLoad and Rivoj.

41. The Factoring Client issues an invoice for payment to each customer, for whom the Factoring Client has performed service(s) or sold good(s)

42. Once the Plaintiffs purchase Accounts, which they believe to be bona fide "Eligible Accounts" as defined in the applicable factoring agreement, from its Factoring Client, in this case, iLoad and Rivoj, the Plaintiffs advance funds to the Factoring Client for the purchased Accounts and then collect payment from the Factoring Client's customers.

43. The Factoring Client's customers are identified in the factoring industry as "Account Debtors," which as defined by § 9-102(3) of the UCC is "a person obligated on an Account…"

44. XPO Logistics, Inc. ("XPO Logistics"), is a global logistics company. It is a corporation incorporated in the state of Delaware with its headquarters located in Greenwich, Connecticut.

45. XPO Logistics was an Account Debtor of both iLoad and Rivoj.

**B.      *Sale of XPO Logistics Accounts by iLoad to FleetOne***

46.      iLoad is a trucking company providing freight transportation services directly and/or through subcontractors.

47.      On or about May 26, 2015, FleetOne and iLoad entered into an Account factoring agreement, titled Amended and Restated Accounts Purchase Agreement (the "iLoad Factoring Agreement"). A true and correct copy of the iLoad Factoring Agreement is attached hereto and incorporated by reference herein as Exhibit 1.

48.      Pursuant to the iLoad Factoring Agreement, iLoad agreed to sell and FleetOne agreed to purchase certain XPO Logistics Accounts (the "iLoad Accounts") and iLoad granted to FleetOne, as security for all present and future obligations of iLoad under the iLoad Factoring Agreement, a continuing first priority and exclusive security interest in the assets of iLoad, including all Accounts, contract and contract rights and all proceeds thereof (hereinafter the "iLoad Collateral"). (Ex. 1-iLoad Factoring Agreement ¶4.1)

49.      On May 18, 2015, FleetOne duly filed a UCC Financing Statement with the Secretary of State of Illinois under File No. 20332026, a true and correct copy of which is attached hereto and incorporated by reference herein as Exhibit 2.

50.      FleetOne perfected its security interest in and to certain iLoad Collateral identified on the UCC Financing Statement, including the Accounts, contracts and contract rights and proceeds thereof by its filing of the iLoad UCC Financing Statement.

51.      On or about May 26, 2015, and simultaneously with the execution of the iLoad Factoring Agreement, Defendant Ewa executed a Guaranty, personally guarantying all of iLoad's obligations under the iLoad Factoring Agreement, in order to induce FleetOne to extend

financial accommodations to iLoad (the "iLoad Guaranty"). A true and correct copy of the iLoad Guaranty is attached hereto and incorporated by reference herein as Exhibit 3.

52.    Between August 05, 2015 and August 31, 2016, FleetOne purchased approximately $909,587.12 per month in XPO Logistics Accounts from iLoad.

53.    FleetOne made Advances of up to Ninety-Five Percent of the face value of each Account, as identified on the iLoad Aging.

54.    Between May 26, 2015 and August 31, 2016, FleetOne received payment of approximately $701,599.01 per month from XPO Logistics for payment of iLoad from iLoad Accounts.

55.    Between May 26, 2015 and August 31, 2016, XPO Logistics paid FleetOne for the iLoad Accounts without counterclaim or offset.

56.    On or about November 1, 2016, XPO Logistics began to dispute invoices representing iLoad Accounts.

57.    On or about December 13, 2016, XPO Logistics informed FleetOne that it did not believe that the outstanding iLoad Accounts were legitimate and that it would not pay any outstanding iLoad Accounts.

58.    An accounts receivable aging identifying all the iLoad Accounts for XPO Logistics' transportation services that were sold to FleetOne by iLoad and are still unpaid and outstanding is attached hereto as Exhibit 4 (the "iLoad Aging").

59.    There is currently One Million Two Hundred Thirteen Thousand Four Hundred Fifty-Nine and 97/100 Dollars ($1,213,459.97) as of February 28, 2017 of outstanding iLoad Accounts due and owing to FleetOne (the "Outstanding iLoad Accounts").

60.     On or about August 25, 2016, iLoad received an "Out of Service Order" from the Federal Motor Carrier Safety Administration (the "FMCSA"), and as a result iLoad was prohibited from operating its trucking fleet.

61.     FleetOne was informed by Ewa that the "Out of Service Order" was due to a failed audit conducted by the FMCSA in connection with the iLoad driver logs.

## C.     Sale of XPO Logistics Accounts by Rivoj to WEX Bank

62.     During July 2016, Ewa contacted FleetOne and informed FleetOne that she had an affiliated transportation company and desired to begin factoring accounts receivable for the affiliated entity, Rivoj.

63.     Rivoj was also providing transportation services primarily for XPO Logistics.

64.     On information and belief, Rivoj operated from the same facility as iLoad, had the same employees as iLoad and had virtually identical operations to iLoad.

65.     On or about August 05, 2016, WEX Bank and Rivoj entered into an Account factoring agreement, titled Accounts Purchase Agreement (the "Rivoj Factoring Agreement"). A true and correct copy of the Rivoj Factoring Agreement is attached hereto as Exhibit 5.

66.     Pursuant to the Rivoj Factoring Agreement, Rivoj agreed to sell and WEX Bank agreed to purchase certain XPO Logistics Accounts of Rivoj (the "Rivoj Accounts") and Rivoj granted to WEX Bank, as security for all present and future obligations of Rivoj under the Rivoj Factoring Agreement, a continuing first priority and exclusive security interest in the assets of Rivoj, including all Accounts, contract and contract rights and all proceeds of thereof (hereinafter the "Rivoj Collateral"). (Ex. 5-Rivoj Factoring Agreement ¶4.1)

67. On August 2, 2016, WEX Bank duly filed a UCC Financing Statement with the Secretary of State of Illinois under File No. 21598046, a true and correct copy of which is attached hereto as Exhibit 6.

68. WEX Bank perfected its security interest in and to certain Rivoj Collateral identified on the Rivoj UCC Financing Statement, including the Accounts, contracts and contract rights and proceeds thereof by the filing of the Rivoj UCC Financing Statement.

69. All Accounts purchased by WEX Bank from Rivoj pursuant to the Factoring Agreement were purchased with recourse to Rivoj. (Ex. 5 Factoring Agreement, ¶3.2).

70. On or about August 05, 2016, and simultaneously with the execution of the Rivoj Factoring Agreement, Defendant Ewa executed a Guaranty in favor of WEX Bank, personally guarantying all of Rivoj's obligations under the Rivoj Factoring Agreement, in order to induce WEX Bank to extend financial accommodations to Rivoj (the "Rivoj Guaranty"). A true and correct copy of the Rivoj Guaranty is attached hereto and incorporated by reference herein as Exhibit 7.

71. The majority of the Accounts sold by Rivoj and purchased by FleetOne were due and owing from XPO Logistics for transportation services.

72. Between August 05, 2016 and August 31, 2016, FleetOne purchased approximately $97,672.40 per week in XPO Logistics Accounts from Rivoj.

73. WEX Bank made Advances of up to Ninety-Five Percent of the face value of each Account.

74. Between August 05, 2016 and August 31, 2016, WEX Bank received payment of approximately $9,876.34 per week from XPO Logistics for payment of Rivoj Accounts.

75.     Between August 05, 2016 and August 31, 2016, XPO Logistics paid WEX Bank for the Rivoj Accounts without counterclaim or offset.

76.     On or about November 1, 2016, XPO Logistics informed WEX Bank that it did not believe that the outstanding Rivoj Accounts were legitimate and it refused to pay any then outstanding or any future Rivoj Accounts.

77.     An accounts receivable aging identifying all the Rivoj Accounts for XPO Logistics transportation services that were sold to FleetOne by Rivoj and are still unpaid and outstanding is attached hereto and incorporated by reference herein as Exhibit 8 (the "Rivoj Aging").

78.     There is currently One Hundred Five Thousand Sixty-Five and 31/100 Dollars ($105,065.31) of outstanding Rivoj Accounts due and owing to WEX Bank (the "Outstanding Rivoj Accounts").

**D.      Due Diligence**

79.     FleetOne sent XPO Logistics a "Notice of Assignment" that put XPO Logistics on notice of the assignment of the XPO Logistics Accounts from iLoad to FleetOne, a true and correct copy of which is attached hereto and incorporated by reference herein as Exhibit 9 (the "iLoad Notice of Assignment").

80.     The iLoad Notice of Assignment satisfied the requirement under the Illinois UCC that notice be given to XPO Logistics as to the assignment of the iLoad Accounts to FleetOne and that all payments of the iLoad Accounts should be made to FleetOne. (Exhibit 9)

81.     WEX Bank sent XPO Logistics a "Notice of Assignment" that put XPO Logistics on notice of the assignment of the XPO Logistics Accounts from Rivoj to FleetOne, a true and

3102594

correct copy of which is attached hereto and incorporated by reference herein as Exhibit 10 (the "Rivoj Notice of Assignment").

82.     The Rivoj Notice of Assignment satisfied the requirement under the Illinois UCC that notice be given to XPO Logistics as to the assignment of the Rivoj Accounts to WEX Bank and that all payments of the Rivoj Accounts should be made to WEX Bank.  (Exhibit 10)

83.     Upon submitting an Account for purchase, each of iLoad and Rivoj were required to submit an invoice, a rate confirmation sheet (the "RateCon") and a Bill of Lading (the "BOL") to confirm that the transportation services were provided (collectively, the "Supporting Documentation").

84.     Plaintiffs were in communication with iLoad and Rivoj virtually every business day during the terms of their respective agreements, by telephone, email or text, with individuals identifying themselves to be Ilija, Ewa or Kinga.

85.      During such communications, Plaintiffs routinely verified with Ilija, Ewa or Kinga that the iLoad Accounts and the Rivoj Accounts were "Eligible Accounts" as defined in the respective factoring agreements.

86.     In reliance on the Supporting Documentation and the communications and representations made by Ilija, Ewa and Kinga, the Plaintiffs made Advances to iLoad and Rivoj.

87.     FleetOne made a total of $18,834,375.27 in Advances to iLoad (the "FleetOne Advances").

88.     WEX Bank made a total of $1,719,366.13 in Advances to Rivoj (the "WEX Bank Advances"; the FleetOne Advances and WEX Bank Advances are collectively referred to herein as the "Plaintiffs' Advances."

### E. Role of Ilija Ristik a/k/a Iko Ristik

89.     Ilija has identified himself on what purports to be his personal LinkedIn account as the "Owner" of iLoad.

90.     According to the Illinois Secretary of State's Business Corporation records, Ilija is identified as the registered agent and President of Rivoj.

91.     Ilija is identified on numerous Bills of Lading as the "Contact" for iLoad.

92.     Ilija s identified on numerous Bills of Lading as the "Contact" for Rivoj.

93.     Ilija supervised and was involved in the operations of both iLoad and Rivoj.

94.     Ilija was a signatory on both of iLoad's bank accounts and Rivoj's bank accounts.

95.     Ilija issued instructions to and had communications with the carriers and drivers providing transportation services on behalf of both iLoad and Rivoj.

96.     Ilija had communications directly with XPO Logistics relating to both the iLoad Accounts and Rivoj Accounts.

97.     Ilija had communications directly with WEX Bank and FleetOne related to both the iLoad Accounts and Rivoj Accounts.

98.     Ilija oversaw and participated in the preparation of both the Rivoj Supporting Documentation and iLoad Supporting Documentation submitted to WEX Bank and FleetOne, respectively.

### F. Role of Kinga Politanska a/k/a Kinga Ristik a/k/a Kinga Savic

99.     Kinga has identified herself on her purported personal LinkedIn account as the "Bookkeeper" of iLoad.

100.     According to the Illinois Secretary of State's Business Corporation records, Kinga identifies herself as the registered agent and President of iLoad.

15

3102594

101.    Kinga identified herself to WEX Bank and FleetOne as the operations manager for Rivoj.

102.    Kinga is identified on numerous Bills of Lading as the "Contact" for iLoad.

103.    Kinga is identified on numerous Bills of Lading as the "Contact" for Rivoj.

104.    Kinga supervised and was involved in the operations of both iLoad and Rivoj.

105.    Kinga was a signatory on both iLoad's bank accounts and Rivoj's bank accounts.

106.    Kinga issued instructions to and had communications with the carriers and drivers providing transportation services on behalf of both iLoad and Rivoj.

107.    Kinga had communications directly with XPO Logistics relating to the iLoad Accounts and the Rivoj Accounts.

108.    Kinga had communications directly with WEX Bank and FleetOne related to the iLoad Accounts and the Rivoj Accounts.

109.    Kinga oversaw and participated in the preparation of both the iLoad Supporting Documentation and Rivoj Supporting Documentation submitted to FleetOne and WEX Bank, respectively.

**G.    _Role of Ewa Politanska_**

110.    FleetOne received the iLoad Factoring Agreement with Ewa's electronic signature as the President of iLoad. (Ex. 1- iLoad Factoring Agreement)

111.    FleetOne received the iLoad Guaranty with Ewa's electronic signature. (Ex. 3- iLoad Personal Guaranty)

112.    WEX Bank received the Rivoj Factoring Agreement with Ewa's electronic signature as the President of Rivoj. (Ex. 5- Rivoj Factoring Agreement)

16

113.    WEX Bank received the Rivoj Guaranty with Ewa's electronic signature. (Ex. 7-Rivoj Guaranty)

114.    Plaintiffs had multiple and frequent telephone calls with a women identifying herself to be Ewa beginning on or about August 24, 2016 through February 2017 regarding all aspects of the operations and Accounts of both of iLoad and Rivoj.

115.    Ewa supervised and was involved in the operations of both iLoad and Rivoj.

116.    Ewa had communications directly with WEX Bank and FleetOne related to both the iLoad Accounts and Rivoj Accounts.

117.    Ewa submitted the iLoad Supporting Documentation and Rivoj Supporting Documentation to FleetOne and WEX Bank, respectively.

**H.      The Audit/Discovery of Fraud**

118.    The iLoad Outstanding Accounts and the Rivoj Outstanding Accounts were represented to FleetOne to be Accounts created through transportation services as shown in the Supporting Documentation submitted for each Account.

119.    Unbeknownst to FleetOne at the time it purchased the iLoad Outstanding Accounts and unbeknownst to WEX Bank at the time it purchased the Rivoj Outstanding Accounts, iLoad, Rivoj, Kinga, Ilija and Ewa had concocted a scheme to induce Plaintiffs to make Advances on such Accounts, with the intent that Plaintiffs would never actually be paid for said Advances.

120.    On or about November 01, 2016, XPO Logistics discovered inconsistencies, inaccuracies and missing information with the iLoad and Rivoj Supporting Documentation.

121.    When Plaintiffs failed to receive payment from XPO Logistics, Ilija, Ewa and Kinga on multiple occasions through telephone conferences and e-correspondence continued to

represent and provide assurances to WEX Bank and FleetOne that the transportation services representing the Accounts had been provided and that each of iLoad and Rivoj had all Supporting Documentation evidencing such transportation services.

122.    The representations made by Ilija, Ewa and Kinga that the iLoad Accounts and the Rivoj Accounts were Eligible Accounts under the respective iLoad Factoring Agreement and Rivoj Factoring Agreement were false and part of a premeditated scheme to defraud WEX Bank and FleetOne.

123.    Further, Ewa and Kinga forwarded a letter to FleetOne, purportedly from BMO Harris Bank, representing that iLoad was in the process of receiving a $800,000 loan facility to facilitate its operations and repay FleetOne for certain of the past due iLoad Accounts.

124.    In reality, on August 23, 2016, BMO Harris Bank had filed a lawsuit against defendant KA Leasing Group, Kinga, iLoad and others for replevin of multiple vehicles due to payment defaults, which lawsuit is currently pending in the Circuit Court of Cook County, Illinois, Case No. 2016 L 050562 (the "BMO Harris Litigation").

125.    As alleged in the BMO Harris Litigation, Kinga, acting through KA Leasing Group, submitted false insurance coverage information to BMO Harris Bank in order to obtain vehicle financing.

126.    BMO Harris Bank was not undertaking due diligence to provide a loan facility to iLoad.

127.    After several weeks of discussions between XPO Logistics and Plaintiffs as to failure of XPO Logistics to pay outstanding iLoad Accounts and Rivoj Accounts, XPO Logistics produced a spreadsheet to WEX Bank and FleetOne detailing its reasons for offset for each of the 881 invoices outstanding representing the iLoad Accounts and the Rivoj Accounts  (the

"<u>XPO Logistics Disputed Invoices</u>"), a true and correct copy of which is attached hereto and incorporated by reference herein as Exhibit 11 (the "<u>XPO Logistics Disputed Invoice Spreadsheet</u>").

128.    As detailed in the XPO Logistics Disputed Invoice Spreadsheet, virtually all the iLoad Outstanding Accounts and the Rivoj Outstanding Accounts were not valid Accounts and not for transportation services actually provided.

129.    As further set forth in the XPO Logistics Disputed Invoice Spreadsheet, out of the Eight Hundred Eighty-One XPO Logistics Disputed Invoices (a) 124 were for cancelled loads; (b) 131 of the iLoad Outstanding Accounts were for loads that iLoad was not on record as the carrier; (c) 3 had invalid load numbers; (d) 37 had incorrect Supporting Documents; (e) 308 did not have valid XPO Logistics load numbers; (f) 58 were for "Turn Around Not Used" and (g) 36 of the Rivoj Outstanding Accounts were for loads that Rivoj was not on record as the carrier.

130.    When FleetOne discussed the XPO Logistics Disputed Invoice Spreadsheet with Ilija, King and Ewa, each repeatedly insisted that XPO Logistics' claims were erroneous and that iLoad and Rivoj had all Supporting Documentation evidencing transportation services provided for XPO Logistics.

131.    Ewa agreed to assemble all Supporting Documentation for each of the iLoad Disputed Accounts, the Rivoj Disputed Accounts and the iLoad and Rivoj bank statement.

132.    Ewa agreed that Plaintiffs' auditor (the "<u>Auditor</u>") would visit the premises of iLoad and Rivoj beginning February 06, 2017 (the "<u>Audit</u>").

133.    On the morning of February 06, 2017, Ewa cancelled the commencement of the Audit.

134.     When the Auditor arrived on February 07, 2017, it quickly became apparent that the deception extended far beyond the XPO Logistics Disputed Invoices.

135.     The sole employee at the premises when the Auditor arrived informed the Auditor that he did not know anyone named Ewa.

136.     Shortly thereafter, an individual identifying herself as Ewa arrived with Ilija, who introduced Ilija as her husband.

137.     Ilija and "Ewa" arrived at the premises in a Rolls Royce Wraith (approximate MSRP of over $300,000).

138.     The Auditor noted that the individual identifying herself as "Ewa" did not match the description of the individual whose driver's license is on file with FleetOne.

139.     The Auditor discovered through social media pictures that the individual introducing herself as "Ewa" was in fact Kinga.

140.     When the Auditor requested identification, Kinga claimed she did not have her driver's license due to getting pulled over for a ticket and asked if the Auditor wanted to see her ticket.

141.     When the Auditor then affirmed he wanted to see a copy of the ticket, Kinga claimed she did not have the ticket.

142.     Kinga never produced any identification as requested by the Auditor.

143.     The Auditor received verbal confirmation that the individual introducing herself as "Ewa" was in fact Kinga when she responded to "Kinga" when questioned by a truck driver at the premises.

3102594

144.    During the course of the Audit, which lasted nine (9) days, the Auditor observed Ilija and employees referring to "Ewa" as "Kinga" and Kinga responding affirmatively to the same.

145.    For the first three days of the Audit, the Auditor was provided copies of only two invoices.

146.    For the next six (6) days of the Audit, the Auditor was provided with limited information, including the following: invoices, bills of lading, bank statements for iLoad, payroll account statements for iLoad, and bank statements for Rivoj.

147.    iLoad did not produce a single piece of Supporting Documentation evidencing that the iLoad Accounts that were included in the XPO Logistics Disputed Invoices were bona fide Accounts.

148.    Rivoj did not produce a single piece of Supporting Documentation evidencing that the Rivoj Accounts that were included in the XPO Logistics Disputed Invoices were bona fide Accounts.

149.    Rather, the Auditor discovered that the Supporting Documentation for the iLoad Outstanding Accounts and Rivoj Outstanding Accounts had been manipulated, including but not limited to the falsification of Bills of Lading.

150.    iLoad and Rivoj could not locate original documentation for many of the Auditor's sample selection requested. Of the 416 invoices selected for review only 73 were provided during the audit.

151.    Of the 73 invoices provided, 66 of the invoices were for canceled loads in which WEX Bank had been provided the initial confirmation and an altered bill of lading rather than the actual cancelled load confirmation and "turn around not used" rate.

21

152.    Other documentation provided to the Auditor by iLoad and Rivoj, which was represented by iLoad and Rivoj to be original documents, was suspect and likely not original because: (a) they did not bear the same evidence of wear as other original documents produced; (b) certain invoices represented as original were repeated in the documents produced; (c) pencil markings used on one invoice to demonstrate it as an original carried over into the next invoice in the selection sample even though the invoices would not have been sequentially sequenced; and (d) the location of the Assignment Stamp did not match the location of the Assignment Stamp of invoices provided to WEX Bank and FleetOne.

153.    For multiple invoices representing the iLoad Outstanding Accounts and Rivoj Outstanding Accounts, original Bills of Lading had been altered, attached to fake invoices and submitted to the Plaintiffs for purchase and Advances.

154.    Defendants knew the false misrepresentations and false documents created and submitted to FleetOne would be relied upon by WEX Bank and FleetOne and were, in fact, relied upon by WEX Bank and FleetOne in providing and authorizing Advances to iLoad.

155.    Defendants knew the false misrepresentations and false documents created and submitted to FleetOne would be relied upon by WEX Bank and FleetOne and were, in fact, relied upon by WEX Bank and FleetOne in providing and authorizing Advances to Rivoj.

156.    Each of Ilija, Ewa and Kinga continued to make false statements to FleetOne regarding impending payment by XPO Logistics for the iLoad Accounts and the Rivoj Accounts with the motive of causing each Plaintiff to forbear to pursue its legitimate legal remedies and the Plaintiffs did forbear in pursuing its legitimate legal remedies based on these false statements.

3102594

**I.      Fraudulent Transfers**

157.     The Auditor was able to review the limited iLoad bank statements provided, which evidenced numerous withdrawals from the iLoad banking accounts by Ilija and Kinga, with some monthly withdrawals exceeding $400,000.

158.     From on or about December 31, 2015 through January 26, 2016, Kinga received checks payable to herself from the iLoad bank accounts in the amount of $254,500.00 (the "Kinga Transfers"), which funds were proceeds of the Plaintiff Advances made upon the purchase of the fraudulent iLoad Outstanding Accounts and/or were assets of iLoad in which FleetOne was granted a security interest.

159.     From on or about December 31, 2015 through January 26, 2016, Ilija received checks payable to himself from the iLoad bank accounts in the amount of $185,000.00 (the "Ilija Transfers"), which funds were proceeds of the FleetOne Advances made upon the purchase of the fraudulent iLoad Outstanding Accounts and/or assets of iLoad in which FleetOne was granted a security interest.

160.     From on or about January 6, 2016 through April 2, 2016, Ewa received checks payable to herself from the iLoad bank accounts in the amount of $14,870.00 (the "Ewa Transfers"), which funds were proceeds of the FleetOne Advances made upon the purchase of the fraudulent iLoad Outstanding Accounts and/or assets of iLoad in which FleetOne was granted a security interest.

161.     From on or about January 4, 2016 through August 29, 2016, iLoad transferred a total of $699,812.28 indirectly to Ilija, Kinga and/or Ewa via payments to various credit card companies for the payment of personal and other expenses of Ilija, Kinga and Ewa (the "Credit Card Transfers"), which funds were proceeds of the FleetOne Advances made upon the purchase

of the fraudulent iLoad Outstanding Accounts and/or assets of iLoad in which FleetOne was granted a security interest.

162.     From on or about January 4, 2016 through August 30, 2016, iLoad transferred a total of $133,226.87 indirectly to Ilija, Kinga and/or Ewa via payments to various automotive finance companies for the payment of personal and other expenses of Ilija, Kinga and Ewa (the "Automotive Transfers"), which funds were proceeds of the FleetOne Advances made upon the purchase of the fraudulent iLoad Outstanding Accounts and/or assets of iLoad in which FleetOne was granted a security interest.

163.     Further, as detailed in Counts XII - XIX hereinbelow, the Audit revealed that Ilija, Kinga, and Ewa have transferred funds from the iLoad bank accounts to various individuals and entities affiliated with Kinga and Ilija, which funds were proceeds of the FleetOne Advances made upon the purchase of the fraudulent iLoad Outstanding Accounts and/or assets of iLoad in which FleetOne was granted a security interest.

164.     During the period of time that King and Ilija were withdrawing funds from the iLoad bank accounts, iLoad was insolvent and in financial distress.

165.     The Audit revealed that iLoad was insolvent and in financial distress as iLoad was (a) making payments to various collection agencies, (b) making same day payments to and from its bank account indicative of check kiting, (c) overdrawn on certain bank accounts and subject to penalties for issuing NSF checks from other bank accounts and (d) iLoad was a defendant in several lawsuits.

166.     iLoad, Ewa, Kinga and Ilija, are each defendants in some or all of the following lawsuits:

a. *Bank of the Ozarks v. iLoad Inc., Ewa Politanska, Kinga Politanska, Ilija Ristik, et al.*, Circuit Court of Cook County, Illinois, Case No. 2017 L 050181, filed February 17, 2017, currently pending;

b. *Bellwood Currency v. iLoad Inc., Kinga Politanska, et al.*, Circuit Court of Cook County, Illinois, Case No. 2017 M2 000621, filed February 16, 2017, currently pending;

c. *Quality Leasing, Inc. v. iLoad, Inc., Ilija Ristik, Kinga Savic,* Circuit Court of Cook County, Illinois, Case No. 2016 L 050851, filed December 23, 2016, currently pending;

d. *IH3 Property Illinois v. Ilija Ristik, et al.*, Circuit Court of Cook County, Illinois, Case No. 2016 M4 005832, filed November 2, 2016, dismissed by stipulation or agreement on November 26, 2016;

e. *BMO Harris Bank NA v. iLoad Inc., Kinga Politanska, et al.*, Circuit Court of Cook County, Illinois, Case No. 2017 L 050562, filed August 23, 2016, currently pending;

f. *Illinois State Tollway v. iLoad Inc.*, Circuit Court of Cook County, Illinois, Case No. 2016 M1 651248, filed August 10, 2016, registration of administrative judgment, citation pending;

g. *Republic Bank of Chicago v. iLoad Inc., Ewa Politanska and Ilija Ristik*, Circuit Court of Cook County, Illinois, Case No. 2016 L 007075, filed July 18, 2016, currently pending;

h. *Berkshire Hathaway v. iLoad*, Circuit Court of Cook County, Illinois, Case No. 2016 M1 110233, filed April 22, 2016, currently pending;

3102594

    i.    *iLoad, Inc. v. Federal Deposit Insurance Corporation*, United States District Court for the Northern District of Illinois, Eastern Division, Case No. 15 cv 10436, counterclaim against iLoad filed May 5, 2016, agreed judgment in the amount of $503,302.01 entered against iLoad on January 12, 2017;

    j.    *Trinity v. Kinga Savic, Ewa Politanska, iLoad Inc., et al.*, Circuit Court of Cook County, Illinois, Case No. 2013 L 001595, filed February 2, 2013, judgment in the amount of $71,871.21 entered against iLoad, Kinga Savic and Luca Trans, Inc., jointly and severally, on October 27, 2016.

167.    During the period of time that King and Ilija were withdrawing funds from the iLoad bank accounts, Rivoj was insolvent.

## COUNT I
### (Breach of Contract: FleetOne v. iLoad)

Withdrawn. iLoad was voluntarily dismissed as a party defendant from this lawsuit on October 26, 2017 because of the iLoad Bankruptcy Case.

## COUNT II
### (Breach of Contract: WEX Bank v. Rivoj)

168-181.    Omitted. Stipulated Judgment entered in favor of WEX Bank and against Rivoj on February 4, 2019. [DE 122]

## COUNT III
### (Breach of Guaranty: FleetOne v. Ewa)

182-199.    Omitted. Stipulated dismissal without prejudice entered on April 5, 2019. [DE 127]

3102594

## COUNT IV
### (Breach of Guaranty: WEX Bank v. Ewa)

200-208.     Omitted. Stipulated dismissal without prejudice entered on April 5, 2019.

[DE 127]

## COUNT V
### (Common Law Fraud: FleetOne v. Ilija and Ewa)

209-224.     Omitted. Stipulated dismissal without prejudice entered on May 8, 2018.

[DE 105]

## COUNT VI
### (Common Law Fraud: WEX Bank v. Rivoj, Ilija and Ewa)

225-240.     Omitted. Stipulated dismissal without prejudice entered on May 8, 2018.

[DE 105]

## COUNT VII
### (RICO – Action for Violations of 18 U.S.C. § 1962(c): FleetOne and WEX Bank v. Rivoj, Ilija, and Ewa)

241-269.     Omitted. Stipulated dismissal without prejudice entered on May 8, 2018.

[DE 105]

## COUNT VIII
### (Fraudulent Transfer: Trustee v. Ilija)

Plaintiff Ira Bodenstein, not individually but solely in his capacity as the Chapter 7 Trustee of iLoad, Inc., for his cause of action for fraudulent transfer against Defendant Ilija states and alleges as follows:

270.     Trustee incorporates by reference Paragraphs 1 through 32, Paragraphs 89 through 117, and Paragraphs 157 through 167 above as Paragraph 270 of this Count VIII as if fully set forth herein.

3102594

271.    As set forth herein, iLoad made transfers totaling $421,692.00 to and for the benefit of Ilija for which iLoad received no reasonably equivalent value in exchange and which were intended to hinder, delay or and defraud iLoad's creditors, including but not limited to FleetOne.

272.    From on or about September 18, 2015 through November 9, 2016, iLoad transferred at a minimum a total of $421,692.00 to Ilija, as follows:

i.    iLoad transferred a total of $315,000.00 to Ilija from iLoad's Polish & Slavic Federal Credit Union bank account, as follows:

   a.   $5,000.00 to Ilija via check no. 3614, dated September 18, 2015 and which cleared on September 22, 2015;

   b.   $3,000.00 to Ilija via check no. 3687, dated September 25, 2015 and which cleared on September 28, 2015;

   c.   $2,000.00 to Ilija via check no. 3712, dated September 28, 2015 and which cleared on September 30, 2015;

   d.   $20,000.00 to Ilija via check no. 5168, dated December 31, 2015 and which cleared on January 6, 2016;

   e.   $18,000.00 to Ilija via check no. 5215, dated January 5, 2016 and which cleared on January 7, 2016;

   f.   $16,000.00 to Ilija via check no. 5259, dated January 5, 2016 and which cleared on January 7, 2016;

   g.   $17,000.00 to Ilija via check no. 5264, dated January 7, 2016 and which cleared on January 11, 2016;

h.  $25,000.00 to Ilija via check no. 5312, dated January 13, 2016 and which cleared on January 19, 2016;

i.  $10,000.00 to Ilija via check no. 5332, dated January 11, 2016 and which cleared on January 13, 2016;

j.  $14,000.00 to Ilija via check no. 5351, dated January 13, 2016 and which cleared on January 15, 2016;

k.  $15,000.00 to Ilija via check no. 5292, dated January 15, 2016 and which cleared on January 20, 2016;

l.  $19,000.00 to Ilija via check no. 5348, dated January 18, 2016 and which cleared on January 21, 2016;

m.  $20,000.00 to Ilija via check no. 5447, dated January 20, 2016 and which cleared on January 21, 2016;

n.  $11,000.00 to Ilija via check no. 5572, dated January 26, 2016 and which cleared on January 29, 2016;

o.  $19,000.00 to Ilija via check no. 5615, dated January 26, 2016 and which cleared on February 2, 2016;

p.  $18,000.00 to Ilija via check no. 5663, dated January 26, 2016 and which cleared on February 3, 2016;

q.  $11,000.00 to Ilija via check no. 5677, dated February 1, 2016 and which cleared on February 4, 2016;

r.  $19,000.00 to Ilija via check no. 5695, dated February 3, 2016 and which cleared on February 8, 2016;

s.  $17,000.00 to Ilija via check no. 5731, dated February 5, 2016 and which cleared on February 9, 2016;

t.  $13,000.00 to Ilija via check no. 5765, dated February 8, 2016 and which cleared on February 10, 2016;

u.  $3,000.00 to Ilija via check no. 6243, dated March 3, 2016 and which cleared on March 4, 2016;

v.  $3,000.00 to Ilija via check no. 6436, dated March 14, 2016 and which cleared on March 17, 2016;

w.  $3,000.00 to Ilija via check no. 6658, dated March 22, 2016 and which cleared on March 28, 2016;

x.  $6,000.00 to Ilija via check no. 6997, dated April 2, 2016 and which cleared on April 12, 2016;

y.  $1,000.00 to Ilija via check no. 7012, dated April 2, 2016 and which cleared on April 12, 2016;

z.  $7,000.00 to Ilija via check no. 7181, dated April 15, 2016 and which cleared on April 19, 2016;

ii.  iLoad transferred a total of $106,692.00 to Ilija from iLoad's Belmont Bank & Trust bank accounts, as follows:

a.  $4,500.00 to Ilija via check no. 5335, dated June 2, 2016 and which cleared on June 6, 2016;

b.  $3,000.00 to Ilija via check no. 5621, dated June 18, 2016 and which cleared on June 20, 2016;

c.  $7,500.00 to Ilija via check no. 5699, dated June 21, 2016 and which cleared on June 22, 2016;

d.  $8,100.00 to Ilija via check no. 5734, dated June 22, 2016 and which cleared on June 23, 2016;

e.  $11,000.00 to Ilija via check no. 5753, dated June 24, 2016 and which cleared on June 27, 2016;

f.  $3,500.00 to Ilija via check no. 5889, dated June 29, 2016 and which cleared on June 30, 2016;

g.  $2,500.00 to Ilija via check no. 6054, dated July 8, 2016 and which cleared on July 11, 2016;

h.  $2,500.00 to Ilija via check no. 6233, dated July 15, 2016 and which cleared on July 18, 2016;

i.  $2,500.00 to Ilija via check no. 6368, dated July 22, 2016 and which cleared on July 25, 2016;

j.  $1,500.00 to Ilija via check no. 6513, dated August 2, 2016 and which cleared on August 4, 2016;

k.  $5,000.00 to Ilija via check no. 6535, dated August 4, 2016 and which cleared on August 5, 2016;

l.  $2,000.00 to Ilija via check no. 6769, dated August 11, 2016 and which cleared on August 15, 2016;

m.  $7,000.00 to Ilija via check no. 6906, dated August 19, 2016 and which cleared on August 22, 2016;

n. $5,000.00 to Ilija via check no. 6993, dated August 10, 2016 and which cleared on August 25, 2016;

o. $4,000.00 to Ilija via check no. 7030, dated August 29, 2016 and which cleared on August 30, 2016;

p. $4,200.00 to Ilija via check no. 7126, dated August 31, 2016 and which cleared on September 1, 2016;

q. $1,000.00 to Ilija via check no. 7159, dated September 2, 2016 and which cleared on September 6, 2016;

r. $3,500.00 to Ilija via check no. 7242, dated September 5, 2016 and which cleared on September 9, 2016;

s. $450.00 to Ilija via check no. 7255, dated September 9, 2016 and which cleared on September 12, 2016;

t. $2,500.00 to Ilija via check no. 7326, dated September 15, 2016 and which cleared on September 16, 2016;

u. $4,000.00 to Ilija via check no. 7429, dated September 21, 2016 and which cleared on September 22, 2016;

v. $1,000.00 to Ilija via check no. 7459, dated September 25, 2016 and which cleared on September 27, 2016;

w. $4,562.00 to Ilija via check no. 7478, dated September 27, 2016 and which cleared on September 28, 2016;

x. $3,000.00 to Ilija via check no. 7492, dated September 27, 2016 and which cleared on September 28, 2016;

32

y.  $2,950.00 to Ilija via check no. 7555, dated October 3, 2016 and which cleared on October 4, 2016;

z.  $2,950.00 to Ilija via check no. 7612, dated October 5, 2016 and which cleared on October 6, 2016;

aa. $2,300.00 to Ilija via check no. 1073, dated October 28, 2016 and which cleared on October 31, 2016;

bb. $2,780.00 to Ilija via check no. 1093, dated November 1, 2016 and which cleared on November 3, 2016;

cc. $1,900.00 to Ilija via check no. 1141, dated November 8, 2016 and which cleared on November 9, 2016.

273.    The foregoing transfers identified in Paragraph 272 (the "Ilija Transfers") constitute fraudulent transfers pursuant to the Illinois Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS 106/5(a)(1), because they were made with the actual intent to hinder, delay or defraud (a) FleetOne with respect to the Outstanding iLoad Accounts owed pursuant to the FleetOne Advances and (b) other creditors of iLoad with respect to amounts due and owing.

274.    The Ilija Transfers constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/5(a)(2), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad intended to incur, or believed, or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

275.    The Ilija Transfers constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/6(a), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad was insolvent at the time of the transfers or became insolvent as a result of the transfers.

33

276. The Ilija Transfers were fraudulent and should be avoided for the following reasons, including but not limited to:

    a. the transfers were made with the actual intent to defraud FleetOne and other creditors of iLoad;

    b. The transfers were made to an insider;

    c. iLoad did not receive reasonably equivalent value in exchange for the transfers;

    d. iLoad was functionally insolvent or became functionally insolvent shortly after the transfers were made;

    e. The transfers occurred shortly after and during the period in which the substantial debt to FleetOne via the FleetOne Advances was incurred; and/or

    f. Before certain of the transfers were made, iLoad had been sued or was threatened with being sued.

277. Trustee has not been provided with complete banking information from iLoad and, upon information and belief, additional fraudulent transfers from iLoad to Ilija may exist which may be discovered during the pendency of this lawsuit.

**WHEREFORE,** Trustee respectfully requests that this Court enter judgment in his favor on Count VIII of the Complaint against Ilija and enter an order granting any or all of the following relief:

A. Declaring that the Ilija Transfers be deemed fraudulent and declared null and void;

B. Avoiding the fraudulent Ilija Transfers made by iLoad to Ilija;

C. Compelling Ilija to immediately disgorge to Trustee the sum of at least $421,692.00 or any greater amount proven at trial to constitute fraudulent transfers for purposes Sections 5 and 6 of the UFTA (740 ILCS 160/5, 160/6);

D. Entering judgment in Trustee's favor and against Ilija in an amount equal to the Ilija Transfers;

E. Awarding such other relief as the circumstances may require pursuant to 740 ILCS 160/8(a), or that this court deems reasonable and just.

## COUNT IX
### (Fraudulent Transfer: Trustee v. Kinga)

Withdrawn. Plaintiff Ira Bodenstein, not individually but solely in his capacity as the Chapter 7 Trustee of iLoad, Inc., withdraws Count IX against Kinga as a result of the Kinga Bankruptcy Case.

## COUNT X
### (Fraudulent Transfer: Trustee v. Ewa)

278-285. Omitted. Stipulated dismissal without prejudice entered on April 5, 2019. [DE 127]

## COUNT XI
### (Fraudulent Transfer: Trustee v. Ilija, and Ewa[1])

Plaintiff Ira Bodenstein, not individually but solely in his capacity as the Chapter 7 Trustee of iLoad, Inc., for his cause of action for fraudulent transfer against Defendant Ilija states and alleges as follows:

286. Trustee incorporates by reference Paragraphs 1 through 32, Paragraphs 89 through 117, and Paragraphs 157 through 167 above as Paragraph 286 of this Count XI as if fully set forth herein.

---

[1] Ewa Politanska was dismissed without prejudice as a party defendant from this lawsuit pursuant to a stipulated dismissal on April 5, 2019. [DE 127]

3102594

287.    As set forth herein, iLoad made transfers totaling $833,039.15 indirectly to and for the direct benefit of Ilija, Kinga and/or Ewa for which iLoad received no reasonably equivalent value in exchange and which were intended to hinder, delay or and defraud iLoad's creditors, including, but not limited to, FleetOne.

288.    From on or about January 4, 2016 through August 29, 2016, iLoad transferred a total of $699,812.28 indirectly to Ilija, Kinga and/or Ewa via payments to various credit card companies for the payment of personal and other expenses of Ilija, Kinga and Ewa, which directly benefitted Ilija, Kinga and/or Ewa. Due to the numerosity of these transactions, the specific transfers are detailed on Exhibit 12 hereto. Each of the transfers identified on Exhibit 12 are collectively referred to as the "Credit Card Transfers".

289.    From on or about January 4, 2016 through August 30, 2016, iLoad transferred a total of $133,226.87 indirectly to Ilija, Kinga and/or Ewa via payments to various automotive finance companies for the payment of personal and other expenses of Ilija, Kinga and Ewa, which directly benefitted Ilija, Kinga and/or Ewa. Due to the numerosity of these transactions, the specific transfers are detailed on Exhibit 13 hereto. Each of the transfers identified on Exhibit 13 are collectively referred to as the "Automotive Transfers".

290.    The Credit Card Transfers and the Automotive Transfers identified in Exhibits 12 and 13 constitute fraudulent transfers pursuant to the Illinois Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS 106/5(a)(1), because they were made with the actual intent to hinder, delay or defraud (a) FleetOne with respect to the Outstanding iLoad Accounts owed pursuant to the FleetOne Advances and (b) other creditors of iLoad with respect to amounts due and owing.

291.    The Credit Card Transfers and the Automotive Transfers identified in Exhibits 12 and 13 constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/5(a)(2), because

36

iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad intended to incur, or believed, or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

292. The Credit Card Transfers and the Automotive Transfers identified in Exhibits 12 and 13 constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/6(a), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad was insolvent at the time of the transfers or became insolvent as a result of the transfers.

293. The Credit Card Transfers and the Automotive Transfers identified in Exhibits 12 and 13 were fraudulent and should be avoided for the following reasons, including but not limited to:

     a. The transfers were made with the actual intent to defraud FleetOne and other creditors of iLoad;

     b. The transfers were made for the benefit of insiders;

     c. iLoad did not receive reasonably equivalent value in exchange for the transfers;

     d. iLoad was functionally insolvent or became functionally insolvent shortly after the transfers were made;

     e. The transfers occurred shortly after and during the period in which the substantial debt to FleetOne via the FleetOne Advances was incurred; and/or

     f. Before certain of the transfers were made, iLoad had been sued or was threatened with being sued.

294. Trustee has not been provided with complete banking information from iLoad and, upon information and belief, additional fraudulent transfers from iLoad for the benefit of Ilija, Kinga and/or Ewa may exist which may be discovered during the pendency of this lawsuit.

**WHEREFORE,** Trustee respectfully requests that this Court enter judgment in his favor on Count XI of the Complaint against Ilija and enter an order granting any or all of the following relief:

A.      Declaring that the Credit Card Transfers and Automotive Transfers be deemed fraudulent and declared null and void;

B.      Avoiding the fraudulent Credit Card Transfers and Automotive Transfers made by iLoad for the benefit of Ilija;

C.      Compelling Ilija to immediately disgorge to Trustee the sum of at least $833,039.15 or any greater amount proven at trial to constitute fraudulent transfers for purposes Sections 5 and 6 of the UFTA (740 ILCS 160/5, 160/6);

D.      Entering judgment in Trustee's favor and against Ilija in an amount equal to the Credit Card Transfers and Automotive Transfers;

E.      Awarding such other relief as the circumstances may require pursuant to 740 ILCS 160/8(a), or that this court deems reasonable and just.

## COUNT XII
### (Fraudulent Transfer: Trustee v. ReLoad LLC, ReLoad Inc., Preston Carter, Adam White, James Elsea, Roza Josifova, Enbravia, Inc.)[2]

Plaintiff Ira Bodenstein, not individually but solely in his capacity as the Chapter 7 Trustee of iLoad, Inc., for his cause of action for fraudulent transfer against Defendant Enbravia, Inc. ("Enbravia"), states and alleges as follows:

295.    Trustee incorporates by reference Paragraphs 1 through 32, Paragraphs 89 through 117, and Paragraphs 157 through 167 above as Paragraph 295 of this Count XII as if fully set forth herein.

---

[2] ReLoad LLC, ReLoad Inc., Preston Carter, Adam White, and James Elsea were voluntarily dismissed with prejudice as party defendants from this lawsuit pursuant to stipulation entered on May 14, 2018. [DE 107] Roza Josifova has not been served.

38

296.     ReLoad Inc., is corporation that was incorporated in the State of Illinois on or about November 9, 2007 and which was involuntarily dissolved by the Illinois Secretary of State on or about April 14, 2017.

297.     ReLoad LLC, is an Illinois limited liability company that was formed and registered with the Illinois Secretary of State on or about August 26, 2016.

298.     Ilija was the Chief Executive Officer of ReLoad, Inc., and upon information and belief, was a shareholder of ReLoad Inc.

299.     Ilija is a manager of ReLoad LLC, and upon information and belief, is a member of ReLoad LLC.

300.     ReLoad Inc., and ReLoad LLC, shared the same common registered agent address and principal office address.

301.     Upon information and belief, ReLoad LLC is the successor to ReLoad Inc.

302.     Upon information and belief, ReLoad LLC utilizes the same workforce as ReLoad Inc., has some or all of the same owners, performs the same services and generally continued the business of ReLoad Inc.

303.     As set forth herein, iLoad made transfers totaling $49,193.14 to and for the benefit of ReLoad Inc., for which iLoad received no reasonably equivalent value in exchange and which were intended to hinder, delay or and defraud iLoad's creditors, including, but not limited to, FleetOne.

304.     From on or about March 18, 2016 through April 15, 2016, iLoad transferred a total of $33,460.76 to ReLoad Inc., via transfers to executives of ReLoad Inc., as payment of their ReLoad wages and/or salaries, as follows:

a. $3,076.93 to Chris Shelhamer, ReLoad CMA, via check no. 6563, dated March 18, 2016 and which cleared on March 21, 2016;

b. $5,000.00 to Preston Carter, ReLoad HR, via check no. 6565, dated March 19, 2016 and which cleared on March 25, 2016;

c. $5,769.23 to Adam White, ReLoad COO via check no. 6564, dated March 28, 2016 and which cleared on March 28, 2016;

d. $3,076.00 to Chris Shelhamer, ReLoad CMA, via check no. 6820, dated April 5, 2016 and which cleared on April 5, 2016;

e. $5,769.32 to Adam White, ReLoad COO, via check no. 6822, dated April 1, 2016 and which cleared on April 11, 2016;

f. $2,884.62 to James Elsea, Reload Operations Director, via check no. 7177, dated April 15, 2016 and which cleared on April 20, 2016;

g. $5,000.00 to Preston Carter, Reload HR, via check no. 7178, dated April 15, 2016 and which cleared on April 20, 2016.

305. From on or about January 26, 2016 through April 12, 2016, iLoad transferred a total of $15,732.42 to ReLoad Inc., via transfers to vendors of ReLoad Inc., for ReLoad's outstanding obligations as follows:

a. $599.20 to ML Sullivan Insurance Agency via check no. 5563, dated January 26, 2016 and which cleared on February 4, 2016;

b. $1,723.33 to Roza Josifova via check no. 6011, dated February 22, 2016 and which cleared on February 22, 2016;

c. $3,500.00 to Enbravia via check no. 6274, dated March 7, 2016 and which cleared on March 9, 2016;

40

    d.    $2,000.00 to Enbravia via check no. 6205, dated March 21, 2016 and which cleared on April 6, 2016;

    e.    $4,500.00 to Enbravia via check no. 6275, dated March 21, 2016 and which cleared on April 6, 2016;

    f.    $1,705.00 to CATS Transport via check no. 6934, dated April 4, 2016 and which cleared on April 7, 2016;

    g.    $1,705.00 to CATS Transport via check no. 7074, dated April 12, 2016 and which cleared on April 15, 2016.

306.    The foregoing transfers identified in Paragraphs 307 and 308 (the "ReLoad Transfers") were made by iLoad to and for the benefit of ReLoad Inc., ReLoad LLC, Preston Carter, Adam White, James Elsea, Roza Josifova, Enbravia and CATS Transport (the "ReLoad Transferees").

307.    ReLoad LLC received the full benefit of the ReLoad Transfers and is liable to FleetOne for the full extent of the ReLoad Transfers because it is the successor to ReLoad Inc.

308.    The ReLoad Transfers constitute fraudulent transfers pursuant to the Illinois Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS 106/5(a)(1), because they were made with the actual intent to hinder, delay or defraud (a) FleetOne with respect to the Outstanding iLoad Accounts owed pursuant to the FleetOne Advances and (b) other creditors of iLoad with respect to amounts due and owing.

309.    The ReLoad Transfers constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/5(a)(2), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad intended to incur, or believed, or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

41

310.     The Reload Transfers constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/6(a), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad was insolvent at the time of the transfers or became insolvent as a result of the transfers.

311.     The Reload Transfers to the ReLoad Transferees were fraudulent and should be avoided for the following reasons, including but not limited to:

    a.  The transfers were made with the actual intent to defraud FleetOne and other creditors of iLoad;

    b.  The transfers were made to an insider or assets controlled by insiders because Ilija was the CEO of ReLoad Inc. and is a manager of ReLoad LLC;

    c.  iLoad did not receive reasonably equivalent value in exchange for the transfers;

    d.  iLoad was functionally insolvent or became functionally insolvent shortly after the transfers were made;

    e.  The transfers occurred shortly after and during the period in which the substantial debt to FleetOne via the FleetOne Advances was incurred; and/or

    f.  Before certain of the transfers were made, iLoad had been sued or was threatened with being sued.

312.     Trustee has not been provided with complete banking information from iLoad and, upon information and belief, additional fraudulent transfers from iLoad to Enbravia may exist which may be discovered during the pendency of this lawsuit.

**WHEREFORE,** Trustee respectfully requests that this Court enter judgment in his favor on Count XII of the Complaint against Enbravia, Inc., and enter an order granting any or all of the following relief:

A.     Declaring that the ReLoad Transfers to Enbravia, Inc., be deemed fraudulent and declared null and void;

B.     Avoiding the fraudulent ReLoad Transfers made by iLoad to Enbravia, Inc.;

C.     Compelling Enbravia, Inc., to immediately disgorge to Trustee the sum of at least $10,000.00 or any greater amount proven at trial to constitute fraudulent transfers for purposes Sections 5 and 6 of the UFTA (740 ILCS 160/5, 160/6);

D.     Entering judgment in Trustee's favor and against Enbravia, Inc., in an amount equal to the ReLoad Transfers to Enbravia, Inc.;

E.     Awarding such other relief as the circumstances may require pursuant to 740 ILCS 160/8(a), or that this court deems reasonable and just.

## COUNT XIII
### (Fraudulent Transfer: Trustee v. Business Transportation Specialists)

Plaintiff Ira Bodenstein, not individually but solely in his capacity as the Chapter 7 Trustee of iLoad, Inc., for his cause of action for fraudulent transfer against Defendant Business Transportation Specialists, LLC, states and alleges as follows:

313.     Trustee incorporates by reference Paragraphs 1 through 32, Paragraphs 89 through 117, and Paragraphs 157 through 167 above as Paragraph 313 of this Count XIII as if fully set forth herein.

314.     Ilija is the manager and CEO of ReLoad.

315.     Brian Delipara was at times employed by ReLoad in carrier sales and was also the sole owner and Manager of Business Transportation Specialists, LLC ("BTS").

316.     As set forth herein, iLoad made transfers totaling $143,888.00 to BTS for which iLoad received no reasonably equivalent value in exchange and which were intended to hinder, delay or and defraud iLoad's creditors, including, but not limited, to FleetOne.

43

3102594

317. On or about February 5, 2016, iLoad transferred funds totaling $200,000.00 to BTS from iLoad's Polish & Slavic Federal Credit Union bank account as follows:

    a. $51,400.00 to BTS via check no. 5735, dated February 5, 2016, which cleared on February 17, 2016;

    b. $44,397.00 to BTS via check no. 5734, dated February 5, 2016, which cleared on February 29, 2016;

    c. $48,091.00 to BTS via check no. 5737, dated February 5, 2016, which cleared on March 1, 2016;

    d. $56,112.00 to BTS via check no. 5736, dated February 5, 2016, which cleared on February 10, 2016.

318. The foregoing transfers identified in Paragraph 320 (the "BTS Transfers") constitute fraudulent transfers pursuant to the Illinois Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS 106/5(a)(1), because they were made with the actual intent to hinder, delay or defraud (a) FleetOne with respect to the Outstanding iLoad Accounts owed pursuant to the FleetOne Advances and (b) other creditors of iLoad with respect to amounts due and owing.

319. The BTS Transfers constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/5(a)(2), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad intended to incur, or believed, or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

320. The BTS Transfers constitute fraudulent transfers pursuant to the UFTA, 740 ILCS 106/6(a), because iLoad did not receive reasonably equivalent value in exchange for the transfers and iLoad was insolvent at the time of the transfers or became insolvent as a result of the transfers.

3102594

321.	The BTS Transfers to BTS were fraudulent and should be avoided for the following reasons, including but not limited to:

    a.	The transfers were made with the actual intent to defraud FleetOne and other creditors of iLoad;

    b.	The transfers were made to an insider or assets controlled by insiders because of the interconnected relationships between Ilija, iLoad, ReLoad, Brian Delipara and BTS;

    c.	iLoad did not receive reasonably equivalent value in exchange for the transfers;

    d.	iLoad was functionally insolvent or became functionally insolvent shortly after the transfers were made;

    e.	The transfers occurred shortly after and during the period in which the substantial debt to FleetOne via the FleetOne Advances was incurred; and/or

    f.	Before certain of the transfers were made, iLoad had been sued or was threatened with being sued.

322.	Trustee has not been provided with complete banking information from iLoad and, upon information and belief, additional fraudulent transfers from iLoad to BTS may exist which may be discovered during the pendency of this lawsuit.

**WHEREFORE,** Trustee respectfully requests that this Court enter judgment in his favor on Count XIII of the Complaint against Business Transportation Specialists and enter an order granting any or all of the following relief:

A.	Declaring that the BTS Transfers to BTS be deemed fraudulent and declared null and void;

B.	Avoiding the fraudulent BTS Transfers made by iLoad;

3102594

C.     Compelling BTS to immediately disgorge to Trustee the sum of at least $200,000.00 or any greater amount proven at trial to constitute fraudulent transfers for purposes Sections 5 and 6 of the UFTA (740 ILCS 160/5, 160/6);

D.     Entering judgment in Trustee's favor and against BTS in an amount equal to the BTS Transfers;

E.     Awarding such other relief as the circumstances may require pursuant to 740 ILCS 160/8(a), or that this court deems reasonable and just.

### COUNT XIV
**(Fraudulent Transfer: Trustee v. iTruck Repair Shop)**

Omitted. A default judgment in the amount of $98,674.30 was entered on Count XIV against iTruck Repair Shop, Inc., a dissolved Illinois corporation, on January 30, 2018.

### COUNT XV
**(Fraudulent Transfer: Trustee v. Energy Line, Inc.)**

Omitted. A default judgment in the amount of $221,706.50 was entered on Count XV against Energy Line, Inc., an Illinois corporation, on January 30, 2018.

### COUNT XVI
**(Fraudulent Transfer: Trustee v. IMex Logistics)**

Omitted. A default judgment in the amount of $39,300.00 was entered on Count XVI against iMex Logistics, Inc., n/k/a A Brokers, Inc., an Illinois corporation, on January 30, 2018.

### COUNT XVII
**(Fraudulent Transfer: Trustee v. Lollipop)**

Omitted. A default judgment in the amount of $168,800.00 was entered on Count XVII against Lollipop, LLC, an Illinois limited liability company, on January 30, 2018.

3102594

## COUNT XVIII
### (Fraudulent Transfer: Trustee v. B Line Transport Inc.)

Omitted. A default judgment in the amount of $10,435.18 was entered on Count XVIII against B Line Transport, Inc., an Illinois corporation, on January 30, 2018.

## COUNT XIX
### (Fraudulent Transfer: Trustee v. PAL 401 LLC)

323-331.    Omitted. Stipulated dismissal with prejudice entered on May 24, 2018. [DE 110]

Respectfully submitted,

WEX BANK, FLEETONE FACTORING, LLC, and IRA BODENSTEIN, not individually but solely in his capacity as the CHAPTER 7 TRUSTEE OF ILOAD, INC.,

By: /s/ Diana H. Psarras
        One of Their Attorneys

Richard H. Fimoff (ARDC No. 804886)
Diana H. Psarras (ARDC No. 6283780)
William A. Castle, Jr. (ARDC No. 6288893)
ROBBINS, SALOMON & PATT, LTD.
Attorneys for Plaintiffs
180 North LaSalle Street, Suite 3300
Chicago, Illinois 60601
(312) 782-9000
Fax (312) 782-6690
LMartinMontplaisir@rsplaw.com
DPsarras@rsplaw.com
WCastleJr@rsplaw.com

3102594

## <u>CERTIFICATE OF SERVICE</u>

I, Diana H. Psarras, an attorney, certifies that on June 18, 2019, I caused a copy of the foregoing document **SECOND AMENDED COMPLAINT**, to be served upon the following parties/counsel of record by (1) electronically filing the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification to said parties/counsel of record of record:

| | | |
|---|---|---|
| Ariel Weissberg | ariel@weissberglaw.com, | anna@weissberglaw.com, |
| | hava@weissberglaw.com, | sarah@weissberglaw.com, |
| | weissberg401@gmail.com | |

*Attorneys for Ilija Ristik*

John R. Ostojic     john@ostojiclaw.com
*Attorneys for Business Transportation Specialists LLC*

And pursuant to Federal Rule of Civil Procedure 5, service was made upon the following parties who have been served but not appeared in this lawsuit via First Class U.S. Mail by depositing the foregoing documents in the U.S. mailbox located at 180 N. LaSalle Street, Chicago, Illinois before 5:00 p.m., proper postage pre-paid, addressed to the following:

Enbravia, Inc.
Attn: Aleksandar Spasov, President
10642 S. Worth Ave.
Worth, IL 60482

By: /s/ Diana H. Psarras
    One of Plaintiffs' Attorneys

Richard H. Fimoff (ARDC No. 804886)
Diana H. Psarras (ARDC No. 6283780)
William A. Castle, Jr. (ARDC No. 6288893)
ROBBINS, SALOMON & PATT, LTD.
Attorneys for Plaintiffs
180 North LaSalle Street, Suite 3300
Chicago, Illinois 60601
(312) 782-9000
Fax (312) 782-6690
RFimoff@rsplaw.com
DPsarras@rsplaw.com
WCastleJr@rsplaw.com

3102594